**UNITED STATES ex rel. NAZARETIAN v. TOD, Commissioner of Immigration.**

(District Court, S. D. New York. March 13, 1923.)

1. Aliens ⊜⟳53—Habeas corpus ⊜⟳9—Commissioner has no "custody" of alien after delivery to master for deportation.

The "custody" of an excluded alien held for deportation, within a writ of habeas corpus means the present power to dispose of the excluded alien, and under Immigration Act Feb. 5, 1917, §§ 17, 18 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, §§ 4289¼ii, 4289¼j), and Immigration Rule 21, subd. 3, the Commissioner of Immigration has no custody of an alien after he has delivered the alien to the master of a vessel for deportation, since he is given no authority to require the master to redeliver the alien to him.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Custody.]

2. Habeas corpus ⊜⟳82—Offer of ship's agent to stop ship and redeliver alien held not to give Commissioner custody as regards guilt of contempt.

Where the Commissioner of Immigration had delivered aliens for deportation to the master of the ship before he learned of a writ of habeas corpus for their discharge, the offer of the ship's agent to stop the ship and have the aliens returned, whether that offer was conditional or unconditional, did not require the Commissioner to assent thereto so as to subject him to punishment for contempt of the writ for refusal of the offer.

3. Habeas corpus ⊜⟳67—Service of writ is normally by delivery of original.

The service of the writ of habeas corpus is normally made by delivery of the original writ.

Habeas Corpus. Proceeding by the United States, on the relation of Kalenik Nazaretian, against Robert E. Tod, as Commissioner of Immigration. On rule to punish the named respondent for contempt of the writ. Rule discharged.

This case comes up on rule nisi supported by affidavits to punish the respondent for contempt of a writ of habeas corpus issued out of this court. The relators were Armenians, who had been ordered excluded by a board of special inquiry and had taken an appeal, on which the order had been affirmed by the Secretary of Labor. The respondent, Commissioner of Immigration at the Port of New York, on February 9, 1923, had placed them on board the S. S. Madonna for deportation to Greece. Thereafter they applied by a next friend to the District Court (L. Hand, J.) for a writ of habeas corpus. The writ was allowed, being directed to the respondent and the Madonna's master. Either just before or after the allowance a telephone message was sent to the respondent on Ellis Island that the writ had been allowed, but he declined to recognize such service. The writ then issued, and a copy was served on the respondent after the ship had left, but while she was within the jurisdictional waters of the District Court. The respondent then went to the office of the Madonna's agent, where, after a talk with him and with the petitioners' lawyers, he refused to take any action. The next friend moved to punish him as for a contempt because of this refusal.

M. Vartan Malcolm and Harold J. Baily, both of New York City, for petitioner.

Everett P. Wheeler, of New Hamburg, N. Y., and Henry W. Jessup, of New York City, amici curiæ.

William Hayward, opposed.

⊜⟳For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

LEARNED HAND, District Judge (after stating the facts as above). [1] Any contempt of the writ in this case depends upon whether the aliens were in the custody of the respondent at the time when he was served, or at best when he first learned that it was allowed. The Immigration Act (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 4289¼a et seq.) leaves it not altogether clear when "the immigration officer" loses custody of an alien. Section 17 (section 4289¼ii) provides that a board of special inquiry "shall have authority to determine whether an alien  *  *  *  shall be deported." Again their decision to exclude "shall be final, unless reversed on appeal to the Secretary of Labor." Section 18 (section 4289¼j) provides that—

"All aliens brought to this country in violation of law shall be immediately sent back." Again, "that it shall be unlawful for any master  *  *  *  to refuse to receive back on board thereof  *  *  *  such aliens; or to fail to detain them thereon; or to refuse or fail to return them  *  *  *  to the foreign port from which they came."

Rule 21, subd. 3, of the Immigration Rules, provides:

"The immigration officer in charge may place excluded aliens on board for deportation immediately upon exclusion wherever in his judgment such action is necessary."

These are the only relevant provisions having the force of law which I can find; the rest must be by way of interpretation, dependent upon the general plan of the act.

"Custody" means the present power to dispose of the excluded alien, and that of "the immigration officer" certainly endures until the alien is delivered to the ship's master, on whom the statute then imposes the duty of retention and deportation. Unless "the immigration officer" has some power to redemand delivery of the alien, certainly he has no custody thereafter. The statute contains no such provision and the officer has no such power. He has nothing to do with the exclusion of aliens except to execute the decision of the board of special inquiry. As to the time of deportation he has indeed a discretion based upon shipping necessities, but that is all. He must deport on the first available ship, unless the board or the Secretary otherwise direct, and having once delivered to the master, he has no more power to recall the alien than a marshal who had delivered a prisoner to a warden. Whether the board or the Secretary might invest him with such power is another matter; until they do, he is functus officio once he has delivered the alien. Any other conclusion would ignore the whole structure of the statute. A detention of the alien originally illegal will, of course, continue to be such whoever has him, and the person actually detaining him is always subject to habeas corpus; but after delivery, that person is the master, and he alone, because the duty of detention is from that time imposed upon him. "The immigration officer" has no power over the master, who need not, and should not, obey any direction of his once he has made delivery, unless the board or the Secretary have given him a new direction. That the master should accept from the "immigration officer," but nothing short of it.

The case therefore depends upon whether the aliens had been delivered to the master before the writ was served, or, assuming that notice of the writ put the respondent at his peril to disregard it, then before he got such notice. The earliest notice claimed to have been given the respondent was between 4:30 and 4:45. The aliens had long since been delivered on board, and the respondent had no power to interfere with the custody of the master; neither the board nor the Secretary having given him any such direction. Hence no inaction of the respondent could be a contempt of the writ.

[2] In fact, the ship's agent, Jones, offered to stop the ship and allow the aliens to be removed, if the respondent would give the word. There is a dispute as to the terms of this offer. Jones and the petitioner's witnesses say that it was unconditional and that it included the use of barges to bring them back. The respondent says that it was conditional upon his assuming responsibility for stopping the ship and did not include any offer of barges. The issue is irrelevant because the respondent had no right to require any redelivery, or to give any orders to the master, and Jones had no right to require the respondent's assent. Whether out of motives of humanity, the respondent, if the offer was unconditional and included barges, should have assented to Jones' suggestion, is another matter not justiciable in any event, on which it would be unfair to express an opinion, until it were ascertained what the offer really was. It seems unlikely that Jones should so have appealed to the respondent, unless he had expected him to take some responsibility for the maneuver.

[3] Therefore I hold that the only person against whom a writ would have been effective was the master. I need hardly add that in what I have said I do not mean to imply that Jones was under any duty to stop his ship and take off the aliens. The person in custody was the master and no writ or notice was served on him. Neither do I mean to say that notice of the issuance of a writ, given for example by wireless to a master, after the ship casts off and while she is within the league limit, charges him with obedience to the writ. That question is not presented in this case, and it would be improper to pass upon it, even though desirable. Perhaps it is not, however, improper to observe that service of a writ of habeas corpus is normally by delivery of the original, and that the cases where notice of a writ is held to be equivalent to service are, so far as I know, cases of injunction where a different rule applies. The matter is the proper subject for a rule which the court will consider in the near future.

Finally, at the request of the respondent I have disregarded the objection, which at once occurred to me on the hearing, that this proceeding to punish for contempt was not begun independently in the name of the United States either by the district attorney, or by any person designated by the court to do so. It was a rule obtained in the proceedings for habeas corpus themselves.

The rule nisi is discharged.