## UNITED STATES v. MAISEL.
### No. 10104.

United States Court of Appeals
Third Circuit.

Argued April 18, 1950.

Decided July 12, 1950.

Charles A. Stanziale, Newark, N. J. (Harold Simandl, Newark, N. J., on the brief), for appellant.

Joseph B. Schwartz, Newark, N. J. (Alfred E. Modarelli, U. S. Atty., Newark, N. J., Max Blau, New York City, Immigration and Naturalization Service, on the brief), for appellee.

Before MARIS, GOODRICH and Mc-LAUGHLIN, Circuit Judges.

McLAUGHLIN, Circuit Judge.

Appellant, an alien of Danish nationality, was indicted and convicted under 8 U.S. C.A. § 180 [1] for knowingly, unlawfully and feloniously reentering the United States after having been arrested and deported therefrom.

He argues on this appeal that there should have been a direction of acquittal; that there was no entry in violation of the statute and that the Trial Court permitted improper evidence to be admitted.

Appellant testified that he is a citizen of Denmark. There was uncontradicted proof that on March 11, 1940, there was an Im-

[1]. The pertinent part of Section 180 reads:

"(a) If any alien has been arrested and deported in pursuance of law, he shall be excluded from admission to the United States whether such deportation took place before or after March 4, 1929, and if he enters or attempts to enter the United States after the expiration of sixty days after said date, he shall be guilty of a felony * * ."

"(b) For the purposes of this section any alien *ordered deported* (whether before or after March 4, 1929) *who has left the United States* shall be considered to have been deported in pursuance of law, * * * ." (Emphasis supplied).

migration and Naturalization Service hearing accorded him under a warrant of arrest, and that on March 30, 1940, a warrant for his deportation was issued. It was further conceded that appellant sailed from San Francisco on August 11, 1945, as a member of the crew of the SS Cyrus Adler, an American ship, for a round trip voyage to Manila, P. I. Appellant said that the ship did not enter Manila Harbor; that he did not leave the ship, and that he returned on it to the United States. His discharge from the Adler indicated that the nature of the voyage was foreign.

Appellant testified that about October 21, 1947, he sailed from Baltimore to Palermo, Italy on the SS William Hawkins. Testimony of appellant at an Immigration and Naturalization Service hearing May 24, 1948, which was in evidence, gave his last arrival in the United States as May 4, 1948, aboard the William Hawkins. The indictment against appellant followed and was based on his reentry of May 4, 1948. The indictment was returned February 8, 1949. The case was tried November 7, 1949.

Appellant's first two points will be considered together. He argues that the evidence was wholly insufficient to sustain a finding of guilt, and therefore that the Court should not have permitted the case to go to the jury and should have granted a motion for a judgment of acquittal. The basis of the contention seems to be that the sailing of appellant on the Adler did not constitute a leaving or departure within the statute, and, since there was no departure contrary to the statute, there could not have been a later illegal entry on the SS William Hawkins. The law is clearly to the contrary. The case of Corsetti v. McGrath, 9 Cir., 112 F.2d 719, is very much in point. Interpreting the governing statute, the opinion holds, 112 F.2d at page 720:

"Subdivision (b) of the above-quoted statute determines that there has been a deportation if the alien has been ordered to be deported and leaves the United States. Knowledge of the issuance of the order of deportation at or prior to such departure is not required by the statute to constitute deportation, and we should not amend the statute to include it. *Appellant was ordered deported, and after issuance of the order, left the United States. Under subdivision (b) he was 'deported'."* (Emphasis supplied).

Nor does it avail appellant that he had signed articles for a return voyage and that, according to him, he did not leave the ship until he returned to California. In McCandless v. United States ex rel. Pantoja, 3 Cir., 44 F.2d 786, an alien seaman had made numerous voyages on various United States ships between New York and foreign ports. His last such trip was to Buenos Aires where he did not disembark. He returned to New York on the same ship. We held, 44 F.2d at page 787, " * * * it is clear that he *departed from this country* and went to a foreign port, and, when he returned from that foreign port to this country, it constituted an entry into the United States, and, as such, subjected him to deportation when the warrant of arrest was issued two years and a half thereafter." (Emphasis supplied). In United States ex rel. Stapf v. Corsi, 287 U.S. 129, 132, 53 S. Ct. 40, 41, 77 L.Ed. 215, Mr. Justice Roberts said, "The relator's arrival in the United States in April 1929, was an entry into this country notwithstanding he was a member of the crew of an American ship which had made a round trip voyage. He came from a place outside the United States, and from a foreign port or place, within the meaning of the immigration laws. United States ex rel. Claussen v. Day, 279 U.S. 398, 49 S.Ct. 354, 73 L.Ed. 758." United States ex rel. Roovers v. Kessler, 5 Cir., 90 F.2d 327, was another such case. There, an alien seaman shipped out of New Orleans on an American vessel. The ship touched five foreign ports. The sailor said he did not go ashore and there was no contradiction of his story. He returned to New Orleans on the same ship. The Court, holding he had made a new entry, said: "Appellant did *leave* the United States on board a ship; he did on board that ship enter foreign ports and foreign territory; and he did, on board the same ship, re-enter the United States. *That he did not betake himself ashore is immaterial."* (Emphasis supplied).

Appellant comes squarely under the above decisions. When he shipped out on the

Adler for Manila, he left the United States for a foreign port. It is of no moment that appellant claimed that the Adler did not actually enter Manila Harbor. There is no assertion that the boat was not in the port of Manila. It was admittedly in foreign territory. Appellant's own discharge from the Adler, which was in evidence, indicated that the voyage was "foreign". Appellant testified that he signed articles in San Francisco for a voyage on the Adler which was specified "as a trip to Manila and back". Section 173 of Title 8 U.S.C.A., which deals with definitions to be used in connection with the Immigration Act, states that "The term 'United States' shall be construed to mean the United States, and any waters, territory, or other place subject to the jurisdiction thereof, except the Isthmian Canal Zone; * * *."

 Appellant, in going to the Philippines on the SS Cyrus Adler, "left the United States" on August 11, 1945, within the expressed language of Section 180(b). In returning to the United States on the SS William Hawkins on May 4, 1948, he entered this country contrary to the prohibition of Section 180(a). The Trial Judge correctly refused to direct a verdict in favor of appellant.

■ Appellant's remaining point concerns the admission into evidence of his prior arrests and convictions and of two prior deportations. This occurred during the reading to the jury of certain questions and answers from appellant's examination of May 24, 1948, by the Immigration Service. The examination was admitted into evidence without objection. There was no objection to the reading of the questions and answers from it, nor any later request that they be stricken and that the jury be asked to disregard them. In the answers appellant admitted having been arrested and convicted four times. The offenses, according to him, consisted of larceny, burglary, a misdemeanor (to which the arresting charge of grand larceny had been reduced) and falsehood in connection with not men-

tioning his previous criminal record in an employment statement. He also stated that he had been previously deported on January 2, 1928, and March 1, 1933.

■ Despite the absence of any semblance of objection this evidence should not have been admitted. Because of its nature we have considered it, of our own motion, in order to ascertain whether it affected the substantial rights of the accused.[2] Our search of the record fails to show that appellant was seriously prejudiced by the evidence. Virtually all of the vital facts were conceded. Under the pertinent law they constituted overwhelming proof of appellant's guilt as charged in the indictment. The verdict was the only reasonable result which could have been arrived at by the jury.

The judgment of the District Court will be affirmed.

---

2. While testifying in his own behalf later in the case, the appellant admitted, on proper cross examination, that he had been convicted of crime four times.