238 F.2d 298
 CEDAR CREEK OIL AND GAS COMPANY, a corporation;
International Trust Company, a corporation; H. C.
Smith; Susan M. Wight; and W. B. Haney, Appellants,
v.
FIDELITY GAS COMPANY, a corporation; Montana-Dakota
Utilities, a corporation; and Shell Oil Company, a
corporation, Appellees.
 No. 15293.
 United States Court of Appeals Ninth Circuit.
 Oct. 22, 1956.
 
 Leif Erickson, J. R. Richards, Helena, Mont., for appellant.
 Coleman, Jameson & Lamey, Billings, Mont., Faegre & Benson, R. L. Nordby, Armin Johnson, Minneapolis, Minn., Raymond Hildebrand, Glendive, Mont., Howard M. Gullickson and Charles N. Wagner, Denver, Colo., for appellees.
 Before POPE, CHAMBERS and HAMLEY, Circuit Judges.
 CHAMBERS, Circuit Judge.
 
 
 1
 We have here the old, old question of when is a judgment a judgment. As usual, there is a variation in the facts from the last case or any other case on the subject.
 
 
 2
 If the defendants (appellees now) who prevailed in the trial court obtained the judgment on June 13, 1956, the plaintiffs' (appellants') notice of appeal filed July 27, 1956, came too late and this court is without jurisdiction to entertain the appeal because more than 30 days had elapsed between judgment and notice of appeal. Rule 73, Federal Rules of Civil Procedure, 28 U.S.C.A. But if appellants are correct and the judgment was entered on July 3, 1956, the notice of appeal, jurisdictional as it is, was timely. The question has arisen on a motion to dismiss the appeal made by the appellees.
 
 
 3
 Plaintiff's complaint sought to quiet title to certain oil lands in Fallon County, Montana. By answer, the defendants asserted rights to be subsisting under certain agreements which they claimed affected the land. The defendants asked to have the validity of the agreements established, but no part of their answer was called by name, a counter-claim. However, the plaintiffs did file a reply to the defendants' answer.
 
 
 4
 The question arises out of this set of facts:
 
 
 5
 1. The district judge on June 12, 1956, signed a fourteen page 'memorandum.' (All would agree this was his opinion in the case and not a judgment.)
 
 
 6
 2. Simultaneously with the signing of the memorandum on June 12, 1956, the judge signed a fifteen page document denominated 'Findings of Fact and Conclusions of Law.' After setting forth under appropriate sub-headings 'Findings of Fact' and 'Conclusions of Law' the document concludes with the final line (i.e., above the date line and signature) which says, 'Judgment is hereby Ordered to be entered accordingly.' (Only this last line of the document together with conclusion No. IX, 'Defendants are entitled to a judgment for costs and disbursements herein,' must be given serious consideration.)
 
 
 7
 3. The clerk filed on June 13 the 'Memorandum' and the 'Findings of Fact and Conclusions of Law' which had been signed the previous day by the judge. On the same day, June 13, the clerk entered upon his docket:
 
 
 8
 a. 'Filed memorandum of the Court.
 
 
 9
 b. 'Filed Findings of Fact, Conclusions of Law, and order for judgment in favor of defendants, for costs and disbursements herein.
 
 
 10
 c. 'Mailed copies of memorandum and findings[1] to counsel herein.'
 
 
 11
 4. On June 19, the defendants filed their cost bill. On that day, notice of taxation of costs went forward to the plaintiffs. On June 29, the clerk taxed the costs and entered in his docket 'Costs taxed at $100.00 in favor of defendants.'
 
 
 12
 5. On July 2, a formal written judgment, two pages in length, entitled 'Judgment' was signed by the district judge and thereupon filed on July 3 with the clerk. (This written judgment was prepared by counsel for the defendants, now appellees, affirmatively established rights in the defendants.) On July 3, the same day, the clerk wrote in his docket:
 
 
 13
 a. 'Filed and entered judgment in favor of defendants and against plaintiffs holding that the Fidelity Operating Agreements, Gas Purchase Agreements and Cooperative or Unit Plan of Development, Unit No. 5, Cedar Creek Anticline, all as more fully described in the second defense of defendants' answer to amended complaint are valid and in full force and effect; that plaintiffs hold and own their respective interests, as defined in Findings of Fact I through XII, inclusive, subject to all of the terms and conditions of the instruments described in the second defense of defendants' answer in all causes of action in amended complaint; and for costs in favor of defendants.
 
 
 14
 b. 'Mailed notice of entry of judgment to Leif Erickson, Helena, Montana; Coleman, Jameson & Lamey, Billings, Montana, and Howard M. Gullickson, Casper, Wyoming, counsel for respective parties.
 
 
 15
 c. 'Filed Judgment Roll.'
 
 
 16
 The text of the notice to counsel by the clerk of the entry of judgment reads as follows:
 
 
 17
 'You are hereby notified that on July 3, 1956, a Judgment was filed, entered and noted in the civil docket in Case No. 1470, Cedar Creek Oil and Gas Company, et al vs. Fidelity Gas Company, et al, in favor of the defendants and against the plaintiffs, as follows:
 
 
 18
 'It Is Ordered, Adjudged and Decreed that the Fidelity Operating Agreements, Gas Purchase Agreements and Co-operative or Unit Plan of Development, Unit No. 5, Cedar Creek Anticline, all as more fully described in the second defense of defendants' Answer to all causes of action alleged in the amended complaint, are valid, subsisting and in full force and effect as between the plaintiffs and these defendants.
 
 
 19
 'It Is Further Ordered, Adjudged and Decreed that plaintiffs, and each of them, hold and own their respective interests, as defined in Findings of Fact I through XII, inclusive, subject and subordinate to all of the terms and conditions of the instruments described in the second defense of defendants' answer to all causes of action alleged in the amended complaint.
 
 
 20
 'It Is Further Ordered, Adjudged and Decreed that the defendants have judgment for their costs incurred herein in the sum of $100.00."
 
 
 21
 Appellants persuasively argue that the case was not one which could have been terminated appropriately with a 'docket entry' judgment simply by direction of the judge. They say defendant really had in the case at all stages a counterclaim to establish the validity of certain leases or contracts affecting the land. Disposition of these claims of defendants required a formal written judgment to be settled by the judge and then to be given to the clerk for a docket entry. The argument has merit, but we consider it unnecessary to fully explore it.
 
 
 22
 It is settled that there is no judgment until the clerk makes his docket entry. Rule 58, Federal Rules of Civil Procedure. Hoiness v. United States, 9 Cir., 165 F.2d 504;[2] Kam Koon Wan v. E. E. Black, Limited, 9 Cir., 182 F.2d 146; Haddock, Limited v. Pillsbury, 9 Cir., 155 F.2d 820.
 
 
 23
 It is true in some cases the trial judge's oral or written instructions to the clerk on an announcement of decision when entered by the clerk, have been held to result in judgment, notwithstanding the circumstances that a formal written judgment, called by the name of 'judgment' was subsequently signed, filed and then docketed by the clerk. Liberty Mut. Ins. Co. v. Pillsbury, 9 Cir., 154 F.2d 559; Steccone v. Morse-Starrett Products Co., 9 Cir., 191 F.2d 597.
 
 
 24
 But certainly we start with no presumption that two judgments were entered and we should search for consistency.
 
 
 25
 There is much plausibility in the view that the order of the judge dated June 12, filed on June 13, and the docket entries of the latter day are ambiguous simply because they slant forward: 'Ordered to be entered' which was docketed as 'Filed * * * order for judgment in favor of defendants, for costs and disbursements.' Under such circumstances it should be permissible to look at what the judge and clerk did later. And when we do so, we find that the record they made on July 2 and July 3 shows unmistakable intent by the district judge to make a judgment on July 2. This was followed by appropriate entries by the clerk for a judgment on July 3. It should not be presumed or assumed they had an intent to do a useless act. If the first acts are ambiguous, we think the later acts afford circumstantial evidence of the intent in the first acts.
 
 
 26
 We see no good argument that the events and records of June 12 and 13 evince clearly an intent to make a judgment on those days and we do not think it was accomplished by the words written. They lack any conclusive indication of finality. They lack a certain element of 'nowness.'
 
 
 27
 It admits of some good reason to say the records of those two days, June 12 and 13, definitely indicate a present intention to enter in the future a judgment. But if the record of the two days is confused, then as above indicated, one can look at the later recorded events. The record as a whole indicates the judgment actually was entered on July 3 and such was the intent of the district judge, the clerk and counsel. The record indicates no earlier intent to have a judgment 'now.'
 
 
 28
 The attack on the timeliness of the appeal is not beyond the bounds of reason, even though this court rejects it. It is right that counsel should try to win their cases in any honorable way. This, they have tried. In reaching our conclusions, we have necessarily had to search through the volumious record sent up by the clerk. Confident as appellees may be of the ultimate outcome of the case, naturally they run some risk in submitting it on the merits to this court. Then, the record is so voluminous that one would not be human if he, having won the case once, did not want to shorten the gamut now rather than tediously go through it again.
 
 
 29
 Wistfully, we wish we could agree with appellees.
 
 The motion to dismiss is denied.[3]
 
 
 [1]
 Apparently no transmittal or notice letter accompanied the memorandum and the findings and conclusions sent to counsel
 
 
 [2]
 Hoiness was reversed, 335 U.S. 297, 69 S.Ct. 70, 93 L.Ed. 16, upon the ground that the notice of appeal was good even though it may have misdescribed the judgment. The question of which of two dates was the judgment date, was not reached by the Supreme Court. If the notice was sufficient, there was no question that it was given within due time whichever date marked the point of judgment
 
 
 [3]
 The parties argue to the court the effect of Rules 63, 64 and 65 of the United States District Court for the District of Montana. These rules were obviously adopted before the advent of the Federal Rules of Civil Procedure in 1938. These three old Montana rules just do not mesh with the overriding rules of the Rules of Civil Procedure. While we find nothing in these Montana rules that mitigates against the conclusion we have reached, we do say the rules have not been of much help. The district court should bring its rules up to date