William **HEIKKILA**, Plaintiff,

v.

Bruce **BARBER**, etc., et al., Defendants.

No. 35373.

United States District Court
N. D. California, S. D.

July 1, 1958.

Lloyd E. McMurray, San Francisco, Cal., for plaintiff.

Lloyd Burke, U. S. Atty., Charles Collett, Asst. U. S. Atty., San Francisco, Cal., for defendants.

EDWARD P. MURPHY, District Judge.

This is a civil contempt proceeding instituted by a show cause order issued on motion of William Heikkila, the plaintiff in this action. The respondents are Bruce G. Barber, named defendant in this action and District Director of the Immigration and Naturalization Service, Thirteenth Immigration District, and Stan Olson, Assistant District Director for Deportation of the same district. The bases of the contempt charges are: (1) deportation of plaintiff while the action was pending; and (2) violation of a restraining order issued by Judge Harris of this court.

### The Facts.

This case has a long history, none of which is pertinent here. For present purposes it suffices to note the following: plaintiff was ordered deported and his application for suspension of deportation was denied; after exhausting his administrative remedies, plaintiff instituted the present action seeking appropriate declaratory and injunctive relief. Defendant Barber answered the complaint and filed a motion to dismiss. After oral argument and filing of briefs, all matters were submitted. The events which followed are set out in chronological order:

*January 14, 1958.* This court issued the following order:

"Any and all relief prayed for by the plaintiff herein is hereby denied and the action is dismissed.

"Let findings of fact and conclusions of law be prepared and submitted in accordance with the rule.

"It Is So Ordered."

On the same day, the clerk made the following entries in the docket:

"Filed *order* denying relief prayed by plaintiff and dismissing action. Counsel to prepare findings, conclusions & judgment.

"(Murphy)"

"Mailed copies order to counsel."

*March 11.* Defendant's counsel submitted to the court and lodged with the clerk proposed findings of fact and con-

clusions of law and a proposed formal judgment.

*April 3.* No objections thereto having been submitted,[1] the court found satisfactory and signed the proposed findings and conclusions and the proposed formal judgment, erroneously dating them April 4. The formal judgment reads:

"Judgment.

"The above matter having been heard by the Honorable Edward P. Murphy, Judge of the above-entitled Court, and the Court having heretofore filed its Findings of Fact and Conclusions of Law, now, therefore,

"It Is Hereby Ordered, Adjudged and Decreed that plaintiff is entitled to no relief by his complaint herein; that said complaint and action be and the same are hereby dismissed, and that defendants have judgment for costs in the sum of $20.00."

On the same day the clerk made the following entries in the docket:

"Filed findings and conclusions.
"(Murphy)"
"Entered *judgment*—filed April 3, 1958—complaint dism. & deft. to recover costs in sum $20.00.
"(Murphy)"
"Mailed notices."

*April 14.* Plaintiff filed a motion "to modify the findings of fact and conclusions of law heretofore entered on the 3rd day of April, 1958," setting the hearing date initially as April 28, which was later changed to May 2.

*April 18.* At 5:30 p. m.[2] plaintiff was arrested as he left work and driven to the San Francisco International Airport. There he was placed aboard a government plane together with Olson and another immigration officer. The plane left at 6:20 p. m. and arrived in Vancouver, British Columbia at 11:30 p. m. the same day. Plaintiff was there placed in the Vancouver City Jail.

*April 19.* Plaintiff's counsel secured from Judge George B. Harris an order restraining "Bruce Barber, and all persons acting in concert with him or under his direction or control * * * from holding in custody, deporting or attempting to deport the plaintiff William Heikkila until the 29th day of April, 1958, or the further order of this court." The order was served on an officer of the Immigration Service the same day. Barber was notified of the order the following day, while Heikkila was still in Vancouver. Olson was not notified of the order until his return to the United States on April 21.

*April 20.* Plaintiff was placed aboard a Canadian Pacific Airlines plane bound for Amsterdam. The plane left at 2:00 p. m. In Amsterdam he was placed by Netherlands authorities aboard a plane bound for Helsinki via Copenhagen (change of planes in Copenhagen). The arrival in Helsinki appears to have been on the afternoon of April 22. The intervening times and dates are not clear.

### Deportation of Plaintiff While the Action was Pending.

The first basis of plaintiff's contempt charges is that the respondents effected his deportation while the action was still pending in this court.

In this connection there has been much argument as to whether the order of January 14 was a final judgment for purposes of appeal. The issue thus framed is defective in two important respects: (1) it ignores the later order of this court dated April 4 and entered April 3; (2) the finality of a judgment for purposes of appeal does not necessarily determine its finality for other purposes.

Taking the view most favorable to plaintiff, it is clear from the many rulings in the Ninth Circuit that at the very least a final judgment in this action

---

1. See N.D.Cal. Rule 21, West's Ann.Code.

2. All times noted are of course approximate.

was entered on April 4.[3] See, e. g., Reynolds v. Wade, 1957, 241 F.2d 208; Cedar Creek Oil & Gas Co. v. Fidelity Gas Co., 1956, 238 F.2d 298; Steccone v. Morse-Starrett Products Co., 1951, 191 F.2d 197; In re California Associated Products Co., 1950, 183 F.2d 946; Kam Koon Wan v. E. E. Black, Ltd., 1950, 182 F.2d 146; Colvin v. Woods, 1950, 180 F.2d 893; Hoiness v. United States, 1947, 165 F.2d 504; J. E. Haddock, Ltd., v. Pillsbury, 1946, 155 F.2d 820; Liberty Mutual Insurance Co. v. Pillsbury, 1946, 154 F.2d 559; see also the recent discussion by the Supreme Court in United States v. F. & M. Schaefer Brewing Co., 1958, 356 U.S. 227, 78 S.Ct. 674, 2 L.Ed. 2d 721.

■ But it appears to be plaintiff's position—there is no specific reference by either side to the judgment of April 4—that his subsequent motion to amend the findings of fact, which were signed and entered on the same day as the separate judgment, in some way effected a stay of this judgment.

■ There is nothing in the Federal Rules of Civil Procedure which supports plaintiff's position. Clearly a motion to amend the findings would not have such an effect on a money judgment[4] even though the money judgment is automatically so deprived of finality for ten days following its entry.[5] A fortiori it

does not have that effect on a judgment denying injunctive relief, which is immediately final for all purposes.[6] Cf. Holsinger v. City of Fresno, 9 Cir., 1957, 246 F.2d 263. The fact that a motion to amend the findings deprives both judgments of their finality for purposes of *appeal*[7] is hardly significant inasmuch as during the ten days following entry exactly the reverse situation obtains in the case of the money judgment (i. e., during that period the money judgment is final for purposes of *appeal*,[8] just as the judgment denying injunctive relief, even though it is not final for purposes of *execution*). In brief: on April 18, though the running of plaintiff's time for appeal had terminated,[9] no provision in the Federal Rules of Civil Procedure operated to stay the judgment and thereby prevent deportation.

The question remaining is whether, wholly apart from the Federal Rules, there is some principle of law by virtue of which a motion to amend the findings operated to stay the judgment *in this particular case*.

Plaintiff urges that such a principle does exist, citing: Merrimack River Savings Bank v. City of Clay Center, 1911, 219 U.S. 527, 31 S.Ct. 295, 55 L.Ed. 320; Lamb v. Cramer, 1932, 285 U.S. 217, 52 S. Ct. 315, 76 L.Ed. 715; Clay v. Waters, 8 Cir., 1910, 178 F. 385; United States

---

3. As has been stated, the date of April 4, written in on the face of the judgment, was erroneous. This is shown by the clerk's file stamp on the judgment as well as by the docket entries. Accordingly, the docket entry date of April 3 would probably be controlling. Cf. Colvin v. Woods, infra.

4. See Fed.R.Civ.P. 62(b), 28 U.S.C.A.; Saikevicz v. Blazo, D.C.D.Mass.1946, 7 F.R.D. 114; 7 Moore, Federal Practice, para. 62.04 n. 4(2d ed. 1955) (hereafter cited as Moore). Likewise it would appear that neither would the motion have this effect on a judgment granting affirmative injunctive relief. See Fed.R. Civ.P. 62(b); cf. id. 62(a), (c); 7 Moore para. 62.04, 62.03.

5. Fed.R.Civ.P. 62(a); see Aron v. Snyder, 1952, 90 U.S.App.D.C. 325, 196 F.2d 38, 40; 7 Moore para. 62.03.

6. See Fed.R.Civ.P. 62(a), 73(a); In re Snyder, D.C.N.D.W.Va.1940, 32 F.Supp. 903; 7 Moore para. 62.03.

7. Fed.R.Civ.P. 73(a); Reconstruction Finance Corp. v. Mouat, 9 Cir., 1950, 184 F.2d 44, 48; 5 Moore para. 52.11[3]; 7 Moore para. 73.09[4].

8. See Fed.R.Civ.P. 73(a); Fiske v. Wallace, 8 Cir., 1940, 115 F.2d 1003, certiorari denied 1941, 314 U.S. 663, 62 S.Ct. 123, 86 L.Ed. 531; 5 Moore para. 52.11 [1]; 7 Moore para. 73.09[1] at 3136, 73.09[4] at 3143; cf. Isgrig v. United States, 4 Cir., 1940, 109 F.2d 131, 134.

9. And would begin anew upon the court's disposition of the motion. Fed.R.Civ.P. 73(a).

v. Shipp, 1906, 203 U.S. 563, 27 S.Ct. 165, 51 L.Ed. 319; Richard v. Van Meter, C.C.D.C.1827, 20 Fed.Cas. page 682, No. 11,763; and Berry v. Midtown Service Corp., 2 Cir., 1939, 104 F.2d 107, 122 A. L.R. 1341.

The main action in the Merrimack case sought an injunction against destruction of certain property upon which there was a mortgage securing bonds held by the plaintiff. The circuit court determined that it lacked jurisdiction and dismissed the action. An appeal was taken to the Supreme Court, which dismissed the appeal without opinion. But "before any mandate had issued or could issue under the rules of [the Supreme Court], and pending the right of petitioners to file an application for a rehearing" (which they subsequently did), certain of the defendants proceeded to remove and destroy the property in question. The Court held that these acts constituted contempt.

The finding of contempt was based upon the fact that although the appeal had been dismissed, a contrary decision on the *merits* was still possible because the time within which to apply for a rehearing had not yet expired.

■ The situation in the instant case is quite to the contrary. The equivalent of a rehearing under the Federal Rules is a motion for a new trial pursuant to Rule 59(a). Slater v. Peyser, 1952, 91 U.S.App.D.C. 314, 200 F.2d 360; Seymour v. Potts & Callahan Contracting Co., D.C.1941, 2 F.R.D. 38, 39. Plaintiff had "10 days after entry of the judgment" within which to make this motion. Fed.R.Civ.P. 59(b). No such motion

was made, and by April 18 the ten day period had long since expired. All that was pending on April 18 was a motion to modify the findings pursuant to Rule 52 (b).

■■ It is well settled that the province of findings is to apprise prospective appellate courts of the basis of the trial court's decision.[10] Rule 52(b), providing for amendment of findings or additional findings upon motion, allows either party to make such a motion. It further provides that this motion "may" be joined with a motion for a new trial under Rule 59. Clearly, Rule 52(b) merely provides a method for "amplifying and expending the [findings of fact]," and is not intended as a vehicle for securing a rehearing on the merits. Matyas v. Feddish, D.C.M.D.Pa. 1945, 4 F.R.D. 385, 386; Canister Co. v. National Can Corp., D.C.D.Del.1946, 71 F.Supp. 49; cf. Fiske v. Wallace, 8 Cir., 1940, 115 F.2d 1003; Reinstine v. Rosenfeld, 7 Cir., 1940, 111 F.2d 892, 894.

Moreover, irrespective of the permissible scope of motions to amend findings under the Federal Rules, *the particular motion filed with this court did not seek a reconsideration of the merits;* it was restricted to matters "amplifying and expanding" the findings of fact. Had the motion been granted in its entirety, it would have required no amendment of the judgment. In oral argument on the motion, plaintiff's counsel did express the "hope" that in passing on the motion to modify the findings the court would change its position on the merits,[11] but this was subsequent to April 18.

10. See, e. g., Irish v. United States, 9 Cir., 1955, 225 F.2d 3, 8; Skelly Oil Co. v. Holloway, 8 Cir., 1948, 171 F.2d 670, 673; Continental Illinois National Bank & Trust Co. of Chicago v. Ehrhart, 6 Cir., 1942, 127 F.2d 341, 343; Goodacre v. Panagopoulos, 1940, 72 App.D.C. 25, 110 F.2d 716, 718; Tulsa City Lines v. Mains, 10 Cir., 1939, 107 F.2d 377; see also Mayo v. Lakeland Highlands Canning Co., 1940, 309 U.S. 310, 316–319, 60 S.Ct. 517, 84 L.Ed. 774.

11. This "hope" was based on the recent decision of the Supreme Court in Ro-

woldt v. Perfetto, 1957, 355 U.S. 115, 78 S.Ct. 180, 2 L.Ed. 140. Although the applicability of the Rowoldt case had not been previously argued, both the litigants and the court had been awaiting the decision. Finding that the constitutional issue was not passed upon in Rowoldt, the court—after making its own determination of the constitutional issues raised by plaintiff—proceeded to apply the case in its other aspects, looking for the "parallel" since suggested by plaintiff. It was determined that the parallel did not exist, as was specifically noted in Finding of Fact XI:

Lamb v. Cramer involved as respondent in the contempt proceedings a nonresident attorney appearing as attorney for the defendant in an action to set aside certain transfers as a fraud on creditors and appoint a receiver. Subsequent to commencement of the action but prior to any decision by the court, the attorney received from the defendant, purportedly in payment of legal services, a substantial part of the property in question. He continued to retain the property after the court issued a decree declaring the transfers fraudulent as to creditors, impressing a trust on the property in favor of the plaintiffs and ordering "all persons" to turn over to the receiver the property in suit. The Court held that the attorney could be proceeded against by way of contempt proceedings both for diverting the property before the decree was entered and retaining the property subsequent thereto, and that he could not set up his immunity as an attorney to quash service of the show cause order.[12]

To the extent that any analogy may be drawn from the Lamb case, at best it would apply in this action only if plaintiff had been deported prior to any decision by this court. Such was not the case.

Clay v. Waters in its essential aspects presents the same situation as the Lamb case, except that whereas it was the transferee in the Lamb case who was held in contempt, here the contemnor was the transferor.

In United States v. Shipp [203 U.S. 563, 27 S.Ct. 166], a state prisoner sentenced to death had appealed to the Supreme Court from the Circuit Court's denial of his petition for a writ of habeas corpus. Pending hearing of the appeal, the Supreme Court ordered a stay of execution. Shortly thereafter the prisoner was lynched by a mob. Contempt proceedings were instituted against the sheriff and others, charging them with conspiring to murder the prisoner, "with intent to show contempt for the order of this court, and for the purpose of preventing it from hearing the appeal and [the prisoner] from exercising his rights." The opinion merely disposes of certain preliminary motions. It holds: (1) as to the charge that neither the Circuit Court nor the Supreme Court had jurisdiction, lack of jurisdiction could not be set up as a defense because the question of its own jurisdiction was one for determination by the Court and "Until its judgment declining jurisdiction should be announced, it had authority * * * to make orders to preserve the existing conditions and the subject of the petition, just as the state court was bound to refrain from further proceedings until the same time [citing statute]"; (2) the acts charged constituted contempt.

As the bases for the Court's determinations were its issuance of a stay order and the provisions of a statute, neither of which is involved in the present proceedings, the Shipp case is not applicable here.

In Richard v. Van Meter a slave who had petitioned for his freedom, alleging that he was presently entitled to freedom by virtue of a contract with the defendant (his master), filed a second petition alleging that the defendant threatened to remove him from the court's jurisdiction "before [the] suit can be tried." On the basis of this second petition an attachment issued against the defendant for contempt of court. The facts bear little resemblance to those before this court,

"Plaintiff's membership in the Communist Party was a 'meaningful association' within the purview of Galvan v. Press, 347 U.S. 522 [74 S.Ct. 737, 98 L.Ed. 911] and Rowoldt v. Perfetto, 355 U.S. 115 [78 S.Ct. 180, 2 L.Ed.2d 140]."
This Finding was not objected to (although plaintiff did seek to have it supplemented).

12. The opinion of the Court of Appeals, 5 Cir., 1931, 48 F.2d 537, and its opinion in a companion proceeding, Schmitt v. Lamb, 5 Cir., 48 F.2d 533, provide a clearer exposition of the case than the Supreme Court opinion.

where long before April 18 the case had been tried and judgment adverse to plaintiff had been entered.

Berry v. Midtown Service Corporation centered on a question which is of remote relevancy to the issues before this court:

> " * * * whether a judgment debtor who obtains a stay of execution without giving bond and during such stay makes himself execution proof, commits a contempt of court." 104 F.2d at page 109.

Moreover, the question was there decided in the negative.

Thus there appears to be no principle of law which would indicate that the deportation of plaintiff on April 18 operated to deprive this court of its jurisdiction over the subject matter of this action or otherwise amounted to contempt of court.

Going further and deciding the question as one of first impression, I am constrained to come to the same conclusion—

█ It had been determined by the proper administrative authorities that plaintiff was deportable; a valid order of deportation had issued and plaintiff's application for suspension of deportation had been denied. At this point, without more, the immigration authorities were free to deport plaintiff. Only the subsequent commencement of this action prevented such deportation.

█ The action was submitted to this court, and the court rendered its decision denying all relief sought by the plaintiff and dismissing the action. Findings of fact, conclusions of law and a formal judgment were subsequently entered. Once again, without more the immigration authorities were free to

deport the plaintiff. Fed.R.Civ.P. 62(a). See Jimenez v. Barber, 9 Cir., 1955, 226 F.2d 449; Id., 9 Cir., 1958, 252 F.2d 550; Fink v. Continental Foundry & Machine Co., 7 Cir., 1957, 240 F.2d 369 and cases there cited; Sobel v. Whittier Corp., 6 Cir., 1952, 195 F.2d 361.

Plaintiff subsequently moved to amend the findings[13] but sought no relief—neither on the merits nor by way of a stay—from the judgment (whether the "judgment" be construed as the order of dismissal of January 14 or the more formal judgment of April 4 is immaterial). The question, then, is whether this motion to amend the findings operated in and of itself to suspend the right of the immigration authorities to deport the plaintiff.

█ Had an appeal been taken, it is clear that this would not have prevented deportation. See Jimenez v. Barber, supra; Brill v. General Industrial Enterprises, 3 Cir., 1956, 234 F.2d 465, and cases there cited. This has been an established principle for a good many years:

> "The general rule is well settled that an appeal from a decree granting, refusing, or dissolving an injunction does not disturb [the decree's] operative effect. [Citations.] When an injunction has been dissolved it cannot be revived except by a new exercise of judicial power, and no appeal by the dissatisfied party can of itself revive it. *A fortiori, the mere prosecution of an appeal cannot operate as an injunction* where none has been granted." Knox County v. Harshman, 1889, 132 U.S. 14, 16–17, 10 S.Ct. 8, 9, 33 L.Ed. 249. (Emphasis added.)

If an appeal would not operate to stay the deportation, it is difficult to see how

---

13. Plaintiff argues that deportation deprived this court of its jurisdiction to pass on the motion. It has been held in a similar case that deportation did not deprive the court of its jurisdiction to pass on the *merits* of controversy. Kokoris v. Johnson, 4 Cir., 1952, 195 F.2d 518. In addition, it is a matter of record that the *appeal* to the Ninth Circuit in

Resurreccion-Talavera v. Barber, 1956, 231 F.2d 524 was argued and decided subsequent to deportation. If deportation does not deprive courts of their jurisdiction to pass on such matters of substance, surely it does not deprive them of jurisdiction to pass on a motion to modify the findings of fact.

a motion to modify the findings could have this effect. An appeal raises substantial questions of law; it is a direct attack on the judgment. Contrariwise, a motion to modify the findings does not raise matters which go to the substance of the judgment for the findings themselves do not go to the substance of the judgment. Steccone v. Morse-Starrett Products Co., supra, 191 F.2d at page 200 and cases there cited. Cf. Holsinger v. City of Fresno, supra, where the Ninth Circuit determined that even a motion to amend a judgment—pursuant to Rule 52(b), the same rule involved here—did not deprive the judgment of its "finality" so as to leave in effect the injunction which the judgment purported to dissolve, inasmuch as the motion did not bring into question the dissolution of the injunction. So here the motion to amend the findings, which did not bring into question the denial of injunctive relief, did not deprive the judgment of its finality so as to leave open the question of injunctive relief which the judgment purported to deny.

In addition, the previous extended discussion in connection with the Merrimack case, supra, applies here with equal force.

Accordingly, I hold that the motion to modify the findings did not suspend the right of the immigration authorities to deport the plaintiff and, therefore, that

there was no contempt of this court solely by virtue of the deportation effected on April 18.

### Violation of the April 19 Restraining Order.

The second and alternative basis of the contempt charges is that, irrespective of the posture of this case on April 18, the respondents violated Judge Harris' restraining order of April 19.

As for the respondent Olson, it is not disputed that he had no knowledge or notice of the restraining order prior to his return to San Francisco. Knowledge or notice of the order violated is an essential element of contempt. See N.L.R.B. v. Sunshine Mining Co., 9 Cir., 1943, 133 F.2d 422; cf. United States v. Hall, 2 Cir., 1952, 198 F.2d 726, 729, certiorari denied 1953, 345 U.S. 905, 73 S.Ct. 641, 97 L.Ed. 1341; Wilson v. State of North Carolina, 1898, 169 U.S. 586, 600, 18 S.Ct. 435, 42 L.Ed. 865. Accordingly, Olson could not be in contempt and the remaining discussion will be confined to Barber.

Judge Harris' order of April 19 restrains Barber, and all persons acting in concert with him or under his direction or control, from "holding in custody, deporting or attempting to deport" the plaintiff. Both the restrain-order [14] and the affidavit of plaintiff's

14. "Upon reading and ordering filed the affidavit of Lloyd E. McMurray, counsel for plaintiff, dated April 19, 1958, and good cause appearing therefor,

"The defendant Bruce Barber, and all persons acting in concert with him or under his direction or control, are hereby restrained from holding in custody, deporting or attempting to deport the plaintiff William Heikkila until the 29th day of April, 1958, or the further order of this Court.

"This order is granted ex parte and without notice, upon the ground that deportation of the plaintiff while the within cause is pending would cause the plaintiff irreparable injury by exiling him from his home and wife without any prospect of return, and would deprive him of the possible fruits of this litigation by making the within cause moot,

upon the further ground that the action of the defendant alleged in the affidavit of counsel would deprive this Court of jurisdiction over the person of the plaintiff and the subject matter of the action.

"It is further ordered that the defendant Bruce Barber be and appear before the above-entitled Court in its courtroom, Post Office Building, 7th and Mission Streets, San Francisco, California, on the 25th day of April, 1958, at the hour of 10 o'clock a. m., then and there to show cause, if any he have, why he should not be further restrained from arresting, imprisoning or deporting plaintiff pending the termination of this action.

"Dated: April 19, 1958

"(Signed)   George B. Harris
        "United States
        "District Judge"

counsel[15] upon the basis of which the order was issued are set out in full in the margin. Reading the restraining order in its entirety and together with the supporting affidavit, it is clear that the restraint is on deportation and all acts *leading up* to deportation.

The affidavit in effect states: plaintiff has been arrested and taken into custody; it is probable that such arrest and detention were in execution of a deportation warrant; if a deportation warrant has been issued the plaintiff may be immediately deported; deportation would cause irreparable injury to plaintiff and deprive this court of jurisdiction. The restraining order in effect states: deportation of the plaintiff would cause him irreparable injury and deprive this court of jurisdiction; therefore, Barber and all persons acting in concert with him or under his direction or control are restrained from deporting plaintiff. Nowhere in either the restraining order or the affidavit is deportation mentioned as something which may already have taken place; it is referred to as something which threatens to take place unless restrained. And this is what was contemplated when the order was issued. Specifically, the "custody" contemplated in the restraining order is custody preparatory, not subsequent, to effective deportation.

15. "State of California  
  "City and County of  } ss.  
  San Francisco

"Lloyd E. McMurray, being first duly sworn, deposes and says:

"That he is attorney for the plaintiff herein. That the within action was filed on April 3, 1956. The complaint sought a temporary restraining order and temporary and permanent injunctions restraining the defendants and all persons acting in concert with them from attempting to deport the plaintiff. It alleges that the defendant Bruce Barber, as District Director of the Immigration and Naturalization Service, 13th Immigration District, and others acting under his direction and control threatened to deport plaintiff under a deportation order based upon plaintiff's membership in the Communist Party of the United States from 1929 to 1939. The complaint attacks the constitutionality of the statute under which the order was issued.

"The Court issued an order to show cause requiring the defendant Bruce Barber to appear and show cause why he should not be restrained from deporting plaintiff. That plaintiff is and since October 26, 1950, has been at liberty upon the posting of a $5,000 bond with the immigration authorities. He has at all times responded when called upon to report to the immigration authorities.

"That the within cause is pending before this Court, a motion to modify findings and conclusions being presently set for argument on Friday, May 2, 1958, before the Honorable Edward P. Murphy.

"That your affiant is informed and believes, and upon information and belief alleges, that on Friday afternoon, April 18, 1958, when the plaintiff left his place of employment at the close of the day's work, he was without warning summarily arrested and taken into custody by the defendant or officers or agents of the defendant. That plaintiff has not been heard from since he was so taken into custody. That plaintiff had on his person at the time no funds.

"That the offices of the Immigration and Naturalization Service were closed to ordinary business at the time of the said arrest, and although your affiant has attempted to reach the defendant Bruce Barber, the said Bruce Barber cannot be found.

"That under the regulations of the Immigration and Naturalization Service the only regular occasion for arrest and imprisonment of plaintiff as herein set forth would be the issuance of a warrant of deportation under the provisions of 3 CFR sec. 243.1. That if a warrant of deportation has been issued and the arrest hereinabove described was the execution of such warrant, the plaintiff may under regulations of the Immigration Service be immediately deported.

"That the deportation of the plaintiff while the within action is pending would cause plaintiff to suffer irreparable harm in that it would exile him from the United States without any prospect of return, separate him from his wife, Phyllis Heikkila, a citizen of the United States, and deprive him of any fruits of the within action by rendering it moot. That the arrest and deportation of the plaintiff would deprive this Court of its jurisdicion both of the subject matter of the action and of the person of the plaintiff.

"(Signed)  Lloyd E. McMurray"

So construing the order of April 19 as restraining deportation and all acts leading up to deportation, at the time the order issued the action restrained had already been taken. Plaintiff had been deported. Section 101(g) of the Immigration and Nationality Act of 1952, 66 Stat. 173, 8 U.S.C.A. § 1101(g) provides:

"For the purposes of this chapter any alien ordered deported * * * *who has left the United States,* shall be considered to have been deported in pursuance of law, irrespective of the source from which the expenses of his transportation were defrayed or of the place to which he departed." (Emphasis added.)

In Corsetti v. McGrath, 1940, 112 F.2d 719, the Ninth Circuit held that even where an alien voluntarily departed without knowledge of an outstanding deportation order issued three days earlier, he had been deported. "[The alien] was ordered deported, and after issuance of the order, left the United States. Under [the predecessor section to 101(g), supra, and identical thereto for all practical purposes] he had been deported." 112 F.2d at page 720. Accord United States v. Maisel, 3 Cir., 1950, 183 F.2d 724.

The action restrained having already been taken at the time the order issued, the order could expend itself on no one and restrain nothing; it could not be violated and there could be no contempt. See Marshall v. Wyman, D.C.N.D.Cal. 1955, 132 F.Supp. 169, 172–173; cf. United States ex rel. Nazaretian v. Tod, D.C. S.D.N.Y.1923, 291 F. 665.

Even if the order were broadly construed as restraining respondents and others from holding plaintiff in custody both before and after effective deportation,[16] it is doubtful that Barber would have had the authority to order plaintiff's release once deportation had been effected (i. e., once plaintiff was out of the United States). "District Directors are authorized by regulation to issue warrants of deportation, to designate the country to which an alien shall be deported, and to determine when his mental or physical condition requires the employment of a person to accompany him." Shaughnessy v. Pedreiro, 1955, 349 U.S. 48, 52–53, 75 S.Ct. 591, 594, 99 L.Ed. 868. There is no indication in the pertinent statutes, regulations or cases that the authority of a District Director extends beyond this. Indeed every indication is to the contrary. See, e. g., Gagliano ex rel. Gagliano v. Bernsen, 5 Cir., 1957, 243 F.2d 880; United States ex rel. Nazaretian v. Tod, supra; cf. Corona v. Landon, D.C.S.D.Cal.1953, 111 F.Supp. 191.

The Nazaretian case involved a proceeding to punish the Commissioner of Immigration for the port of New York (apparently equivalent to what is now a District Director) for contempt in refusing to honor a writ of habeas corpus. Pursuant to an order of deportation, the respondent had placed certain aliens aboard a vessel bound for Greece, the country to which they had been ordered deported. While the vessel was still within the jurisdictional waters of the District Court, a copy of a writ of habeas corpus directed to the respondent and

16. Although the issue here is not one of proof, as a practical matter determination of the scope of the restraining order will, at least negatively, be decisive of the contempt issue. Accordingly, it is not inapposite to note that the courts, recognizing that "contempt of court is indeed a very grave thing," N.L.R.B. v. Standard Trouser Co., 4 Cir., 1947, 162 F.2d 1012, 1015, are unanimous in holding that contempt will not be found where there is a "fair ground of doubt" as to violation of the court's order. California Artificial Stone Paving Co. v. Molitor, 1885, 113 U.S. 609, 618, 5 S.Ct. 618, 622, 28 L.Ed. 1106. See, e. g., Hanley v. Pacific Live Stock Co., 9 Cir., 1916, 234 F. 522, 531; N.L.R.B. v. Standard Trouser Co., supra; Kansas City Power & Light Co. v. N. L. R. B., 8 Cir., 1943, 137 F.2d 77, 79; Fox v. Capital Co., 3 Cir., 1938, 96 F.2d 684, 686; City of Campbell, Mo. v. Arkansas-Missouri Power Co., 8 Cir., 1933, 65 F.2d 425, 427–428; Electro-Bleaching Gas Co. v. Paradon Engineering Co., D.C.E.D. N.Y.1929, 15 F.2d 854, 855.

to the ship's master was served upon the respondent. Respondent thereupon went to the office of the ship's agent, who offered to stop the ship and allow removal of the aliens. Despite the offer, the respondent refused to take any action. On the basis of this refusal the contempt proceedings were instituted. Holding that the ship's master, who was not served, was the only person against whom the writ would have been effective, the District Court, Learned Hand, J., discharged the order to show cause. Although the case involved the narrow issue of whether the Commissioner had "custody" of the aliens at the time he was served, Judge Hand's language has a felicitous application to the situation before this court:

> "He [the respondent] has nothing to do with the exclusion of aliens except to execute the decision of the board of special inquiry. As to the time of deportation he has indeed a discretion based upon shipping necessities, but that is all. He must deport on the first available ship, unless the board or the Secretary [of Labor] otherwise direct, and having once delivered to the master, he has no more power to recall the alien than a marshal who had delivered a prisoner to a warden. Whether the board or the Secretary might invest him with such power is another matter; until they do, he is functus officio once he has delivered the alien." 291 F. at page 666.

So here the District Director's job is to execute warrants of deportation and once he has effected the deportation he is *functus officio.*

Without authority on the part of Barber to order plaintiff's release once plaintiff was out of the country, this court would be without authority to direct

17. Plaintiff does not appear to contend that Barber had authority to order his return to the United States, and it is clear from the above authorities that he would not have such authority. In addition to other obstacles, plaintiff would

Barber to take such action. Cf. Williams v. Fanning, 1947, 332 U.S. 490, 68 S.Ct. 188, 92 L.Ed. 95; Daggs v. Klein, 9 Cir., 1948, 169 F.2d 174. And of course, regardless of the court's authority to issue such an order, Barber could not be in contempt. "Ordinarily, one charged with contempt of court for failure to comply with a court order makes a complete defense by proving that he is unable to comply." United States v. Bryan, 1950, 339 U.S. 323, 330, 70 S.Ct. 724, 730, 94 L.Ed. 884; see also N.L.R.B. v. Caroline Mills, 5 Cir., 1948, 167 F.2d 212; United States ex rel. Emanuel v. Jaeger, 2 Cir., 1941, 117 F.2d 483, 488 and cases there cited; cf. Healey v. United States, 9 Cir., 1950, 186 F.2d 164.[17]

It follows from the foregoing discussion that there could be no contemptuous violation of the restraining order of April 19, and I so hold.

A word of caution: I do not condone Barber's action. On the contrary, it is my feeling that his conduct was nauseous and futile. The deportation of Heikkila was at the best or at the worst an abortive thing. Whether he was acting on his own or under the guidance of his superior is a debatable question. A more patent example of official bad judgment is difficult to conjure. Were his seizure of Heikkila not fraught with so much peril to the rest of us, it would border on the ludicrous.

In our scheme of law, the rights of man are unalienable. They come from the Creator. They do not come from a President, a Legislature or a Court, much less the Director of Immigration.

Barber's conduct "shocks the conscience". It does more than "offend some fastidious squeamishness or private sentimentalism."

clearly be excludable. See Bonetti v. Rogers, 78 S.Ct. 976; cf. Lazarescu v. United States, 4 Cir., 1952, 199 F.2d 898, 901; United States ex rel. Patton v. Tod, 2 Cir., 1924, 297 F. 385, 395.

The spirit, if not the letter of our laws has always guarded against authoritarian methods. Barber's conduct in this matter, however conscientiously pursued, clearly falls below those standards. It derives from an attitude that is inimical, if experience is any guide, to the most enduring interests of the law.

But as a Judge I must rule according to the law regardless of my own personal feelings upon such moral issues as may be involved in any particular case.

## Summary.

On April 18 there had been a final determination by this court that plaintiff was entitled to no relief and the court had entered a final judgment dismissing the action. The judgment was effective immediately. Plaintiff had attempted to secure neither a stay of this judgment nor a rehearing, and the time within which to apply for a rehearing had long since expired. Plaintiff's motion to amend the findings did not go to the merits and if granted would not have affected the judgment. Accordingly, on April 18, the immigration authorities were free to deport the plaintiff.

Judge Harris' order of April 19 only restrained deportation and acts preparatory to deportation. At the time the order issued the action restrained had been taken. If the order were construed as extending to acts subsequent to effective deportation, respondent Barber would be without authority to comply with such an order.

Therefore, neither respondents' deportation of plaintiff nor their acts subsequent to deportation constituted a contempt of this court, and the order to show cause is discharged.

This order shall also constitute the court's findings of fact and conclusions of law.

It is so ordered.

## Stay Order.

The above order obviously does not affect the status of the main action out of which the contempt proceedings arose. However, in an abundance of caution and to avoid any possible confusion, it is hereby Ordered that deportation and/or exclusion of the plaintiff is stayed pending disposition of any appeal of the above order as well as any appeal taken in the main action.