In the Matter of Herman RUBIN individually and Herman Rubin as surviving and liquidating partner of Rubin's Pastries, a partnership.

No. 28768.

United States District Court
E. D. Pennsylvania.

Aug. 5, 1966.

875

See also, D.C., 242 F.Supp. 408.

Lawrence Goldberg, Philadelphia, Pa., for debtor.

Erwin L. Pincus, Philadelphia, Pa., for John Reber Baking Corp.

Melvin Lashner, Philadelphia, Pa., for receiver.

Edward Cohen, Philadelphia, Pa., for respondents.

## OPINION

JOHN MORGAN DAVIS, District Judge.

We have before us the petition of the receivers for review of the decision of the referee denying their citation for civil contempt against some of the debtor's former driver-salesmen and against its major supplier and certain of its employees for disregarding the Order of Court dated February 23, 1965.

The long and varied history of this case commenced on February 23, 1965 when the debtor, Herman Rubin, filed a petition for arrangement under Chapter XI of the Bankruptcy Act. On that day the court appointed a receiver and on March 9, added a co-receiver.

At the time of the filing of the petition the debtor was engaged in business as a wholesale pastry distributor. He would purchase pastries from suppliers such as the respondent John Reber Baking Corporation and then resell this merchandise to retail outlets through driver-salesmen.

For approximately a week or so, the receivers purchased its pastries from the Reber Corporation, but all business between it and the debtor ceased on March 8.

A few days later, the receivers filed with the referee a petition for citation for contempt against John Reber Baking

876

Corporation; John Reber, Warren Leonard, Irving Saunders, Edward Wasson, all associated with the Reber Corporation; and Philip Abrams, Jules Goldstein, Joseph Bibbo, Bernard Kaufman, and Jerry Glazer, all former driver-salesmen of the debtor. The receivers alleged that the above named violated the Court's Order of February 23, 1965 which provided:

"[It is] FURTHER ORDERED that the debtor and all other persons, firms and corporations, including the landlord, creditors, sheriffs and constables, are hereby enjoined and restrained from in any wise interfering with the exclusive possession and control by said receiver of said business and property of the debtor, and from selling, assigning, concealing, encumbering transferring or otherwise disposing of or affecting any of the said business and property."

The referee granted the respondent's motion to dismiss on the ground that no property of the debtor was involved in the petition and that the court lacked jurisdiction over their persons because of the lack of service of process of the Order appointing the Receiver. We reversed that decision in the case of In the Matter of Herman Rubin, 242 F. Supp. 408 (E.D.Pa.1965), where we held that the established routes were assets of the debtor within the possession of the Bankruptcy Court and that the court had jurisdiction over the persons of all the respondents. We remanded the case to the referee for a hearing on the merits of the receivers' petition for contempt.

After a hearing, the referee, in his opinion filed on March 29, 1966, dismissed the receivers' petition, finding, inter alia, that the routes were not the property of the debtor and that the respondents had not interfered with any property of the debtor in violation of the court's Order of February 23, 1965.

After careful review of the Opinion of the referee and the testimony before him, we have come to the conclusion that he erred and that his decision must be reversed.

## I.

In the first place, the referee assumed that the routes travelled by the driver-salesmen were not assets belonging to the debtor's estate but belonged to the driver-salesmen. This court specifically rejected that conclusion in its Opinion of June 14, 1965, and must again reiterate that they are property owned by the debtor.

The Union contract, between the Teamsters and the debtor, which was introduced into evidence at the hearing before the referee sets forth the relationship of the driver-salesmen to the debtor. While the agreement states "whereas it is the contention of Rubin that his relationship with said driver-salesmen is that of distributor and independent contractor, "it at no point provides that the driver-salesmen own their own routes. Instead, under the contract, the debtor was to maintain a relief driver to service any route when the need arose and, in the event of a vacancy, the route was to be filled by bid and under certain circumstances "in any manner deemed fit by Rubin."

In addition, paragraph II of the Union contract states:

"The Union agrees to cooperate with Rubin in enforcing covenants contained in individual agreements with driver-salesmen, not to compete or divert trade and patronage assigned to such driver-salesmen for a reasonable period of time following the date of termination of service, and will do everything possible to cooperate with Rubin for the enforcement of such covenants or agreements restraining unfair competition by such former driver-salesmen.

The record does not contain a copy of the contracts between the driver-salesmen and debtor if any, in fact, existed, but the testimony given at the hearing, added to what the union contract states, gives us a clear picture that these men had the status of employees and not independent contractors owning their own routes. Although they owned their own trucks, serviced them, supplied their own liability insurance, and did not have

their taxes withheld, the debtor supplied them with uniforms, provided them with sick leave compensation and life insurance; paid their health insurance premiums, restricted them to selling items purchased from Rubin, took back all unsold merchandise, and subjected to its approval the allotment of vacation time "with regard to maintenance of regular deliveries."

## II.

We now come to the uncontroverted testimony at the hearing before the referee on the citation for contempt.

During the end of February and the beginning and middle of March 1965, the respondent driver-salesmen were dissatisfied with Mr. Herman Rubin, the debtor, and announced to the receivers that they would not continue to work for him or them.

On the night of February 24, 1966, the day after the receiver had been appointed, a Mr. Warren Leonard, the general manager and vice-president of the John Reber Baking Corporation, Rubin's principle supplier, told the receiver that his men would not cross the picket line set up by the debtor's drivers. The receiver never saw this picket line.

Later that evening, the receiver observed the respondents Kaufman, Bibbo, Abrams, Goldstein, and Glazer obtaining baked goods and pastries from a Reber truck at the Ivystone Motel approximately a mile north of Rubin's building.

From February 24 to March 3, no merchandise was delivered to the debtor. However, on March 4, 5, 6, and 7 the debtor received deliveries from Reber and other suppliers and these were distributed to the driver-salesmen who in turn took them to various retailers.

On March 8, 1965, Reber Corporation, which itself was in a precarious financial position, informed the receiver that it would make delivery of its merchandise on a c. o. d. basis only. The receiver replied that it would be unable to do business in this manner, and he received no delivery from this supplier on March 8.

On the following day, a private investigator hired by the attorney for the receivers followed a Reber truck being operated by respondents Saunders and Wasson. The latter two attempted to evade the investigator but were unable to do so. They finally drove to Philadelphia where they delivered their products to respondents, Abrams, Kaufman, and Goldstein, who were present with their trucks. Some of the trucks were without identification and some had the legend "Rubin Pastries" on the sides.

When receivers rejected Reber's demand on March 8 for a c. o. d. business relationship, they arranged for credit from the Duvernoy Bakeries, Inc. and received shipments from them on March 14 and 15, but they arranged for no further orders from this company because the driver-salesmen picked up such a light quantity of these baked goods.

On March 19, 1965, the receivers paid the drivers all their outstanding commissions and union benefits. None of them ever called in orders after that date.

On the evening of March 22, the receivers along with their attorney drove to Ivystone Motel referred to previously where reports indicated that the Reber Corporation was distributing pastry goods to the respondent driver-salesmen. The attorney then attempted to serve respondent Leonard with the contempt petition which had been filed with the referee on March 15. He immediately started the engines of his car and drove off with the receivers and their attorney in pursuit. After a chase of many miles, Leonard evaded them without being served.

During the early hours of the following morning the receivers again observed respondents Kaufman, Bibbo, and Glazer procuring merchandise from a Reber truck at the same Ivystone Motel that had been used previously as an unloading and distribution point. The respondent Wasson was present and indicated that he was in charge of the operation for the Reber Corporation.

All during this period, Rubin Pastries had had no complaints from retailers that

they were not receiving deliveries from the driver-salesmen even though prior to the Bankruptcy proceedings, a retailer would call Rubin's office if it had not received any merchandise. One of the respondents told an employee of the debtor that arrangements had been made with Reber to supply the drivers, to receive orders directly, and to pay Reber directly without a middleman.

The referee also received the testimony of two former employees of Rubin who went to work for Reber Corporation in late February 1965. They stated that the Reber Corporation had been servicing the driver salesmen at least since the time they began to work for their new employer.

Although the burden of the petitioner seeking a citation for civil contempt is a heavy one, see Schauffler v. Local 1291, International Longshoremen's Ass'n, 292 F.2d 182, 189–190 (3d Cir. 1961), the uncontroverted evidence produced by the receivers indicates to us that the respondent driver-salesmen have interfered with the property of the debtor in violation of the court's Order of February 23, 1965. See Ex Parte Tyler, 149 U.S. 164, 13 S.Ct. 785, 37 L.Ed. 689 (1893); Converse v. Highway Construction Co. of Ohio, 107 F.2d 127, 127 A.L.R. 860 (6th Cir. 1939); In re Quick Charge, Inc., 69 F.Supp. 961 (W.D. Okl.1947). They have continued to receive merchandise directly from the supplier, and none of Rubin's customers has ever called to complain that they were not being serviced. The conclusion is inescapable that these driver-salesmen were continuing to deliver pastry goods along the established routes of the debtor to the detriment of the latter's property rights.

We feel, however, that the evidence against the other five respondents, Edward Wasson, Irving Saunders, Warren Leonard, John Reber and John Reber Baking Company is not sufficient to warrant a contempt citation. John Reber's name does not appear at all in the testimony taken before the referee. While John Reber Baking Corporation, its general manager and its employees Irving Saunders and Edward Wasson did provide the driver-salesmen with pastry and baked goods, this supplier had no contract requiring it to sell to Rubin and was free to sell to anyone who would purchase from it and on the conditions it believed to be in its best interest, considering its precarious financial condition. We may be suspicious of its conduct and that of its general manager and employees, but suspicions are not enough to hold someone in contempt of court. See Schauffler v. Local 1291, International Longshoremen's Ass'n, supra.

The case will again be remanded to the referee for a hearing on the question of civil damages caused by the respondent driver-salesmen who have been held in contempt.

### ORDER

And now, this 5th day of August 1966, it is hereby Ordered that the respondents, Philip Abrams, Jules Goldstein, Joseph Bibbo, Bernard Kaufman, and Jerry Glazer be and the same are held in contempt of the Order of Court dated February 23, 1965.

It is further Ordered that the above named respondents be and the same are enjoined and restrained from operating on the individual routes that they had serviced while driver-salesmen of the debtor; and it is further Ordered that each of the above named respondents be and the same is enjoined and restrained from operating on the route or routes serviced by any of the other respondents or other driver-salesmen while they were driver-salesmen of the debtor.

It is further Ordered that the petition for contempt against the John Reber Baking Corporation, John Reber, Warren Leonard, Irving Saunders and Edward Wasson be and the same is dismissed.

It is further Ordered that the case be remanded to the referee in bankruptcy for a hearing on the question of civil damages suffered by the debtor as a result of the contemptuous conduct of the respondents named in the first paragraph of this Order.