In the Matter of Herman RUBIN, Individually and Herman Rubin as Surviving and Liquidating Partner of Rubin's Pastries, a Partnership, Debtor.

Jules Goldstein, Henry Glazer, Philip Abrams, Bernard Kaufman and Joseph Bibbo, Appellants.

No. 16209.

United States Court of Appeals Third Circuit.

Argued March 22, 1967.

Decided June 5, 1967.

Edward Cohen, Philadelphia, Pa. (Cohen & Novack, Philadelphia, Pa., on the brief), for appellants.

Melvin Lashner, Philadelphia, Pa. (Adelman & Lavine, Philadelphia, Pa., on the brief), for appellees.

Before STALEY, Chief Judge, and KALODNER and SMITH, Circuit Judges.

## OPINION OF THE COURT

STALEY, Chief Judge.

This is an appeal from an order adjudging appellants guilty of contempt of court. The citation arises out of a violation of a court order issued in an Arrangement Proceeding filed under Chapter XI of the Bankruptcy Act. 11 U.S.C. § 701 et seq. The debtor in that proceeding, Herman Rubin, an individual and surviving partner of Rubin's Pastries, had employed the appellants as "driver-salesmen" in the distribution of baked goods and pastries to retail establishments. On the day the Petition for an Arrangement was filed, February 23, 1966, an order was entered appointing a receiver and restraining the debtor and others from interfering with the debtor's property. The appellants were made aware of the restraining provision in the order. They continued to service their regular customers by purchasing the baked goods and pastries directly from one of the debtor's primary suppliers. Shortly thereafter, the receiver filed a petition for the citation of appellants for contempt, alleging a violation of the restraining order.

The matter was referred to the referee for a hearing. He concluded that the service on the alleged contemnors was improper and dismissed the petition. The district court granted the receiver's

certificate for review, overruled the referee's dismissal, and remanded the case to the referee for a hearing on the merits. In the Matter of Rubin, 242 F.Supp. 408 (E.D.Pa., 1965).[1] On remand, the referee took testimony, made extensive findings, and concluded that there had been no interference with the debtor's property. He dismissed the petition. Once again, a certificate for review was filed; and once again, the referee was overruled. In the Matter of Rubin, 256 F.Supp. 874 (E.D.Pa., 1966). The district court held that the routes travelled by the "driver-salesmen" were the property of the debtor, that the property of the debtor was *in custodia legis* from the time the petition was filed, and that the driver-salesmen who purchased baked goods directly from Rubin's suppliers rather than through Rubin had interfered with the debtor's property and violated the court's order prohibiting such interference. Finding the driver-salesmen in contempt,[2] the district court remanded the case to the referee for a determination of damages. 256 F.Supp. at 876–878.

On this appeal, appellants raise two issues: whether the bankruptcy court had summary jurisdiction over this dispute; and whether the bankruptcy court had made proper service on the appellants. The resolution of those questions ultimately will depend on whether the property in question—the routes—was in the constructive possession of the debtor at the time the petition was filed or any time subsequent thereto. Cf., Katchen v. Landy, 382 U.S. 323, 327, 86 S.Ct. 467, 15 L.Ed.2d 391 (1966).[3] There is, however, another matter of paramount importance which requires our attention.

█ The issue to which we turn is essentially one of jurisdiction, and requires us to examine with a critical eye the procedure employed by the district court in finding the appellants guilty of contempt. Aside from the distinctions between civil and criminal contempts, there are two types of contempts which can arise in bankruptcy cases. The first is unique and indigenous to bankruptcy proceedings and deals with contempts committed before referees or violations of their orders. While referees are vested with the powers of the district court, Bankruptcy Act § 2(a) (15), 11 U.S.C. § 11(a) (15), matters relating to commitment, Bankruptcy Act § 38(2), 11 U.S.C. § 66(2), and punishment for contempts committed in their presence and/or of their orders, Bankruptcy Act § 41, 11 U.S.C. § 69, are beyond their jurisdiction. 1 Collier, Bankruptcy ¶ 2.67; 9 Remington, Bankruptcy § 3524. All contempts, whether they be committed in the presence of the district court or the referee or of their orders, are punishable only by the district court. O'Hagan v. Blythe, 354 F.2d 83 (C.A.2, 1965).

██ Once the citation is before the district court, it has been said that its power to punish is no broader than its power in other cases. See Isaacs v. Hobbs Tie & Timber Co., 76 F.2d 209 (C.A.5), cert. denied, 295 U.S. 753, 55 S.Ct. 834, 79 L.Ed. 1697 (1935). The procedure is the same as in regular contempt cases. 1 Collier, Bankruptcy ¶ 2.58 [3]; 9 Remington, Bankruptcy §§ 3546 at n. 4, 3554. The only distinction between contempts of the district court and contempts of the referee is that the latter must be certified to the district court in accordance with the provisions of § 41(b) of the

---

1. This decision was appealed, but the appeal was dismissed for lack of jurisdiction by an order of this court dated October 25, 1965.

2. The district court dismissed the petition against a primary supplier of Rubin, John Reber Baking Corp., and its employees with whom the appellants had allegedly conspired to interfere with the debtor's property.

3. "Constructive possession" means not only those situations outlined in Taubel-Scott-Kitzmiller Co. v. Fox, 264 U.S. 426, 432–433, 44 S.Ct. 396, 68 L.Ed. 770 (1924), but also possession of intangibles—property incapable of actual physical custody. 2 Collier, Bankruptcy ¶ 23.-05[4] at 477 et seq.

Bankruptcy Act. In re Gitkin, 164 F. 71 (E.D.Pa., 1908); 2 Collier, Bankruptcy ¶ 41.09; 9 Remington, Bankruptcy § 3544; see generally Goldfarb, The Contempt Power at 115–17.

Having outlined the procedure prescribed by the Act, it is apparent that the proceedings below are not in accord with it. We cannot perceive why this matter was referred to the referee. This is not a case which required his certification under § 41(b) since no contempt was committed in his presence or in violation of one of his orders. If there was a contempt at all, it was of the district court's general restraining order. Since the district court remarked in its first opinion that "It cannot be argued that established routes of a wholesale distributor with established retail customers are not property and therefore not an asset of the debtor's estate,"[4] it appears to us that the sole reason for referring the case to the referee would be the determination of punishment.[5] As we have pointed out, the referee has no such power under the Bankruptcy Act.

Regardless of the procedural faults, the fact remains that the district court and not the referee found the appellants guilty of contempt. We must therefore examine and determine what effect, if any, these procedural defects had on the district court's finding of contempt. We note that no testimony was adduced or evidence offered before the district court. We are, therefore, in no different position than it in determining whether there was a contemptuous violation of its order.

The order reads as follows:

"* * * that the debtor and all other persons * * * are hereby enjoined and restrained from in any wise interfering with the exclusive possession and control by said receiver of said business and property of the debtor * * *."

There is no specific mention in the order that the "driver-salesmen's" routes were the property of the debtor nor were they listed on the schedule of property.

It cannot be doubted that routes such as those that are here can be property. Numerous cases and authorities have so concluded. Many of these sources were cited by the Pennsylvania Supreme Court[6] for the statement that:

"In many businesses, permanent and exclusive relationships are established between customers and salesmen. The customer lists and customer information which have been compiled by such firms represent *a material investment of the employers' time and money*. This information is highly confidential and constitutes a valuable asset. Such data has been held to be property in the nature of a 'trade secret' for which an employer is entitled to protection, independent of a non-disclosure contract, either under the law of agency or under the law of unfair trade practices." Morgan's Home Equip. Corp. v. Martucci, 390 Pa. 618, 623, 136 A.2d 838, 842 & n. 1 (1957). (Emphasis supplied.)

See also Summe v. Chapman Dairy Co., 238 F.2d 3 (C.A.8, 1956); Developments in the Law—Competitive Torts, 77 Harv. L.Rev. 888, 955–59 (1964).

---

4. 242 F.Supp. at 411. At the time the district court made this finding, no evidence had been adduced concerning the relationship between the debtor and the "driver-salesmen." We, therefore, can find *no factual basis in the record* to support that conclusion.

5. The only other plausible basis for referring the case to the referee would be to view the proceedings as a combined "turnover proceeding" and contempt citation. The manifest injustice of finding a man guilty of contempt under the circumstances here is obvious. In re Kalmanowitz, 211 F. 167, 169 (E.D.N.Y. 1914).

6. We do not cite this Pennsylvania case as controlling authority. It appears that the routes are located in New Jersey. Though it would appear that the law of both states is similar, we express no conclusion as to which, if either, should apply. Cf., Board of Trade v. Johnson, 264 U.S. 1, 10, 44 S.Ct. 232, 68 L.Ed. 533 (1924).

To find that such routes could be property is one thing, but to hold that these routes were the property of the debtor and that the appellants were chargeable with the knowledge that the routes were the debtor's are completely different matters. The procedural irregularities preclude us from deciding whether or not the routes were the property of the debtor. There is evidence which could support either conclusion. Our scope of review is of critical importance. If the hearing before the referee had been a turnover proceeding, it is clear that the referee's findings could not be overturned by either the district court, General Order 47; cf., In re J. L. N. Distributors, Inc., 330 F.2d 815 (C.A.2, 1964), or this court, cf., Earhart v. Callan, 221 F.2d 160 (C.A.9), cert. denied, 350 U.S. 829, 76 S.Ct. 59, 100 L.Ed. 740 (1955), unless they were clearly erroneous. The matter which was heard before the referee, however, was a contempt proceeding, *albeit* an unauthorized one; and his findings, even if they were authorized (as in a § 41(b) certification), would be subject to a wholly independent judicial review. O'Hagan v. Blythe, 354 F.2d 83, at 84. In light of the fact that the referee and the district court reached totally opposite factual and legal conclusions, it would be highly inappropriate to express an opinion as to their respective findings when our scope of review is not defined. Furthermore, in light of the result we reach, another proceeding will have to be initiated at which time the parties should be afforded an opportunity to offer additional evidence and exhibits that may more clearly define the relationship between the appellants and the debtor.[7]

Despite the absence of a standard defining our scope of review and the desirability of additional evidence, we do not merely reverse. We hold that this dispute should never have been tried as a contempt case at this stage.

■ We base our conclusion on several readily apparent facts in the present record. These facts point to two fatal defects which preclude a contempt citation. In order to cite a person for contempt for violating a court order, two principles, each a corollary of the other, must, among other requirements, be established. The first of these is that it must be proved that the alleged contemnor had knowledge of the order which he is said to have violated. Wilson v. North Carolina, 169 U.S. 586, 600, 18 S.Ct. 435, 42 L.Ed. 865 (1898); Yates v. United States, 316 F.2d 718, 723 (C.A. 10, 1963); NLRB v. Sunshine Mining Co., 133 F.2d 422 (C.A.9, 1943); Kelton v. United States, 294 F. 491, 495 (C.A.3, 1923); Heikkila v. Barber, 164 F.Supp. 587, 595 (N.D.Cal.1958), appeal dismissed, 308 F.2d 558 (C.A.9, 1962).

The corollary of this proposition is that the order which is said to have been violated must be specific and definite. Terminal R. R. Ass'n v. United States, 266 U.S. 17, 29 (1924); Lustgarten v. Felt & Tarrant Mfg. Co., 92 F.2d 277 (C.A.3, 1937); Heikkila v. Barber, 164 F.Supp. 597 & n. 16. These two principles are merged in a general statement which is specifically applicable here:

> "An order may be so vague or indefinite that, even though the alleged contemnor is chargeable with knowledge of such order, he cannot be punished for doing what he did in view of lack of certainty as to what it prohibited or directed." 9 Remington, Bankruptcy § 3549 at 176.

■■ As we noted above, the court's order does not specifically refer to the routes nor are they included in the debtor's schedule of property. If this were a case involving property where the debtor's ownership and possession was

---

7. We are perplexed over the conspicuous absence of any discussion in the record of the covenants not to compete. Though we recognize the difficulties of establishing adoption by the receiver and the existence of a strike pertaining to enforcibility, we think the existence or non-existence of such covenants would be most persuasive of proving or disproving that the routes were the property of the debtor.

unquestioned or unquestionable, a contempt might lie for a violation of the order. But this is not the case. First, there is a serious question as to whether there is any property. As was discussed above, certain facts must first be established before a property right arises in retail routes. It would be unconscionable to impose upon laymen the knowledge of whether these facts exist and that the routes are the property of the debtor.[8] Secondly, it is obvious from the evidence already produced that there is substantial doubt as to whether the routes are, in fact, the property of the debtor. While it is true that the appointment of a receiver is a *caveat* to the world concerning the debtor's property, summary and plenary proceedings, not contempt proceedings, are the proper vehicles for determining ownership or possession of or title to property. These principles were made clear in Maggio v. Zeitz, 333 U.S. 56, 68 S.Ct. 401, 92 L.Ed. 476 (1948), when the Supreme Court emphasized the necessity of maintaining separate proceedings where a contempt arises out of a failure to obey a turnover order. The Court noted that issues of possession and ownership are to be determined in the turnover proceeding and that those findings are res judicata and cannot be attacked in the contempt proceeding.

■■ Though we reverse, the likelihood of further proceedings concerning these routes requires us to briefly dispose of the questions of summary jurisdiction and service of process. As we noted, the question of summary jurisdiction will depend on whether the debtor had constructive possession of the routes at the time the petition was filed or anytime subsequent thereto. In the case of intangibles such as these routes, constructive possession usually follows ownership. In re Marsters, 101 F.2d 365 (C.A.7, 1938), cert. denied sub nom. Herman v. Henley, 306 U.S. 663, 59 S.Ct.

788, 83 L.Ed. 1059 (1939) (and cases cited). Of course ownership can only be determined from an in-depth examination of the relationship, contractual and otherwise, between the "driver-salesmen" and the debtor. If ownership is determined to reside in the debtor, the court will have summary jurisdiction as well as jurisdiction over the routes themselves since it has jurisdiction of the "debtor['s] * * * property, wherever located." Bankruptcy Act, § 311, 11 U.S.C. § 711. A necessary concomitant of that jurisdiction is the power to make extraterritorial orders to prevent interference with the property in its custody. See 8 Collier, Bankruptcy ¶ 3.03.

The judgment of the district court will be reversed.

---

8. It could be argued that the order also prohibited interference with the debtor's business and that the appellants would clearly know that they were interfering with the debtor's business. This, however, merely states the issue another way since the property rights would define the scope of the business.