**Budd L. RICE et al.**
v.
**INTERNAL REVENUE SERVICE et al.**
**Civ. A. No. 58–72 Erie.**

United States District Court,
W. D. Pennsylvania.
Jan. 24, 1973.

See also D.C., 355 F.Supp. 607.

Richard L. Thornburgh, U. S. Atty., for plaintiffs.

James B. Brown, Pittsburgh, Pa., William McFate, Oil City, Pa., for defendants.

## OPINION AND ORDER DISMISSING PETITION FOR CONTEMPT

KNOX, District Judge.

This action arose out of the Internal Revenue's efforts to obtain the records of bank accounts and transactions of certain taxpayers, particularly, Budd L. Rice and certain allegedly related individuals, in the possession of Northwest Pennsylvania Bank and Trust Company of Oil City, Pennsylvania (hereinafter referred to as the bank). The taxpayers came to this court July 18, 1972, requesting a Temporary Restraining Order to prevent the Internal Revenue Service from obtaining these records and the bank from turning them over. A Temporary Restraining Order was issued and then extended for a short period after a hearing before this court. It was dissolved by order dated July 27, 1972, effective July 28, 1972, but was later reinstated July 28, 1972, by Judge Rosenberg pending appeal by the taxpayers from the dissolution of the Temporary Restraining Order and denial of a preliminary injunction. This reinstatement was pursuant to Rule 8 of the Rules of Appellate Procedure and after consultation by Judge Rosenberg with the undersigned who was engaged in judicial business in Erie at the time.

Thereafter, the United States filed a petition (civil action 99–72 Erie) to enforce under 26 U.S.C. § 7604 an Internal Revenue summons which had been issued to the bank on July 13, 1972.

Taxpayers have filed a petition in this case (58–72E) asking that the Internal Revenue Service be found in civil contempt of Judge Rosenberg's Order of July 28, 1972,[1] and be subjected to fines and other relief. The taxpayers contend that the Order of Judge Rosenberg prevents the Internal Revenue Service from

---

1. Order of July 28, 1972, which pertinent parts read:

"1. That the defendant, Internal Revenue Service, its agents, representatives, and all persons acting in concert with defendant or on its behalf become and thereby are, restrained from:

(A) Obtaining any books, records or documents from defendant, Northwest Pennsylvania Bank and Trust Company, by means of summonses until the propriety and legality of such summonses are determined by a court of competent jurisdiction; or

(B) Requiring or attempting to require defendant, Northwest Pennsylvania Bank and Trust Company, its officers, representatives and/or agents from producing for inspection and the aforesaid books, records and/or documents.

2. Defendant, Johnny Walters, be directed and required to order any and all Internal Revenue Service Agents to cease and desist from requiring or attempting to require defendant Northwest Pennsylvania Bank and Trust Company, from releasing the aforesaid books, records or documents for inspection."

taking *any* action including the judicial proceedings to enforce the summons at 99–72E. to obtain the records of the taxpayers from the bank and that the government's effort to enforce the summons by legal action violated the court order.

■ We cannot agree with this contention of the taxpayers for the reason that in order for there to be a contempt of court the order must be specific and definite as to what it prohibits and the alleged contemptuous conduct must clearly be in violation. In Re Rubin, 378 F. 2d 104, 108 (3d Cir. 1967); Lichtenstein v. Lichtenstein, 425 F.2d 1111, 1113 (3d Cir. 1970). Here the issue is whether the government can continue to press by *legal means* and judicial proceedings its claimed rights to obtain the documents held by the bank. The first paragraph of the Temporary Restraining Order restrains the Internal Revenue Service from obtaining the books, records, and documents from the bank by the use of summonses until the legality thereof is determined. This paragraph certainly allows some leeway for the Internal Revenue Service to enforce its summonses by legal process, since in such proceedings the Service necessarily would have the propriety and legality of the summonses determined by a court of competent jurisdiction in accordance with the Temporary Restraining Order. Surely the bank, which was contesting the summonses served upon it, was not going to voluntarily comply with any enforcement proceeding but would queston it before this court as it is doing.

■ We cannot believe that the use of legal process to determine the issues was ever intended to be denied by the issuance of the Temporary Restraining Order.

■ Collaterally, we believe that proceedings to prevent the Internal Revenue Service from obtaining records of the taxpayer do not extinguish the Commissioner's summons enforcement power in a separate legal action. United States v.

Roundtree, 420 F.2d 845, 847–848 (5th Cir. 1969).

Therefore, since the Temporary Restraining Order did not meet the specificity and definiteness standards of the law with respect to the conduct now complained of, we must follow the guidance of Judge Learned Hand when he stated:

" . . . it is cardinal . . . that no one shall be punished for the disobedience of an order which does not definitely prescribe what he is to do." [2]

If the bank had in the face of this order voluntarily turned over these papers or if a group of agents had entered the bank and secured the papers by a show of force, there certainly would have been a contempt, but we refuse to find that resorting to the lawful processes of this court as authorized by Act of Congress constitutes a violation.

An order will be entered dismissing the petition.

---

2. NLRB v. N. Y. Merchandise Co., 134 F.2d 949, 952 (2d Cir. 1943).