ALITO, Circuit Judge,
concurring and dissenting:
I join parts I, IIA, and IIB of the opinion of the court. I cannot, however, agree with the court that the City of Philadelphia was properly held in contempt for ceasing to list (a) inmates with detainers who were ineligible for release because they were held on “enumerated” offenses and (b) inmates whom the City believed posed an imminent danger to the community or to themselves.
A. INMATES WITH DETAINERS. As the court acknowledges, a party may not be held in contempt unless it violates a “ ‘specific and definite’ ” court order. Maj. typescript at 13 (citations omitted). See also Eavenson, Auchmuty & Greenwald v. Holtzman, 775 F.2d 535, 544 (3d Cir.1985); In re Rubin, 378 F.2d 104, 108 (3d Cir.1967). In ceasing to list inmates who were charged in Philadelphia with “enumerated” (i.e., serious offenses) and who also had detainers lodged against them, the City did not, in my view, violate any specific and definite prohibition. I analyze this question in two steps.
First, as the court appears to recognize (see Maj. at 1352), the City was not required to list inmates who were ineligible for release under paragraph 17a of the 1991 Consent Decree. Paragraph 17 of the 1991 Con *1357 sent Decree (the provision that the district court found that the City had violated) provides in pertinent part as follows:
a. Defendants shall designate and submit to the Special Master the names of inmates who meet the criteria of Paragraph 4.E(i)-(iii) of the September 22, 1990 Order which provides for the release of:
(1) all persons admitted to the prisons under prior orders of the court who are still detained but who would not be admitted under the provisions of this order as now modified;
(2) prisoners held in default of the lowest amount of percentage bail as necessary to reduce the population in all institutions to the maximum allowable populations. If inmates considered for release under this paragraph are held in default of equal amounts of bail, preference shall be given to the inmate held the longest time. Persons charged with offenses enumerated in paragraphs 3A and 3B[1] shall not be released pursuant to this paragraph. ...
e. The Special Master shall direct the release of all inmates who meet the criteria set forth in Paragraph 17. a_
JA116-17 (emphasis added). Thus, paragraph 17a requires the defendants to submit to the Special Master the names of inmates who meet the specified criteria for release, and paragraph 17e requires the Special Master to “direct the release of all inmates” who meet those criteria. JA117. Accordingly, it seems clear that the defendants were not obligated to submit the names of inmates who were ineligible for release under paragraph 17a.
Second, it is at least arguable that all inmates charged with enumerated offenses (including those inmates who were charged with enumerated offenses and who also had detainers lodged against them) were ineligible for release under paragraph 17a. Paragraph 17a(2) of the 1991 Consent Decree, which was quoted in full above, states in relevant part:
Persons charged with offenses enumerated in paragraphs 3A and 3B shall not be released pursuant to this paragraph....
JA116-17. The term “this paragraph” must be interpreted as referring, at a minimum, to paragraph 17a (and not just paragraph 17a(2)).[2] Accordingly, paragraph 17a(2) appears to prohibit any person charged with an enumerated offense from being released pursuant to paragraph 17a. And since, as noted above, the City was required to list only those inmates who were eligible for release under paragraph 17a, it seems to follow that no inmates charged with “enumerated” offenses (including those inmates who also had detainers) were required to be listed.
In holding that the City was properly found in contempt, the majority relies in large part on what it views as the “ ‘thrust’ ” of the 1991 Consent Decree, i.e., “to move out *1358 of the Philadelphia prisons those who could be reasonably moved elsewhere.” Maj. at 1353. Even if we were required in this appeal to ascertain the best interpretation of the 1991 Consent Decree, I would, for the reasons explained above, have serious reservations concerning the majority’s interpretation. But since, as the majority concedes, “ambiguities redound to the benefit of the contemnor,” id., it seems quite clear that the City was not properly held in contempt for ceasing to list the inmates at issue here.[3]
B. DANGEROUS INMATES. I believe that the district court also erred in holding the City in contempt for ceasing to list inmates who would pose an imminent danger to the community or to themselves.
Paragraph 4 of the 1986 Consent Decree provides strong support for the City’s argument that it was not required to list dangerous inmates. This provision plainly states that the “City Defendants ... agree not to seek the release of any person whose release would constitute an imminent threat to public safety or to the inmates’ own health, safety or welfare.” JA93 (emphasis added). Since, as previously discussed and as the majority itself appears to recognize (Maj. at 1352), the City was not obligated to list inmates who were not eligible for release, it follows that, as long as paragraph 4 of the 1986 Consent Decree remained in effect, the City was not required to list inmates that it regarded as dangerous.
The district court and the majority argue that paragraph 4 of the 1986 Consent Decree was superseded by paragraph 18 of the 1991 Consent Decree. This latter provision states:
The procedures set forth in Paragraph 17 of this Stipulation and Agreement shall supersede Paragraphs 4.A.-C. of the September 22, 1990 Order. Otherwise, this Stipulation and Agreement shall not affect the operation of the September 22, 1990 Order or Paragraphs 1 and 2.a-c and h-1 of the remedial provisions of the Consent Order of December 30, 1986, as amended, which shall remain in full force and effect except as they may be further amended.
JA118-119.
In my view, this provision is at least ambiguous as to whether Paragraph 4 of the 1986 Consent Order was superseded. While the court makes a rather elaborate argument in favor of supersedure (see Maj. at 1354-56), a very reasonable argument can be made in favor of a contrary interpretation. Because Paragraph 18 of the 1991 Consent Decree expressly provides for certain portions of prior orders (but not paragraph 4 of the 1986 Consent Decree) to be superseded, it can be argued with some force that no other su-persedure should be inferred. As the majority notes, “[t]he resolution of ambiguities ought to favor the party charged with contempt.” Maj. at 1350. Thus, because there are substantial ambiguities here, I think that the district court erred in holding the City in contempt for ceasing to list inmates whom the City regarded as dangerous.
I am particularly troubled by the district court’s holding because of its potential impact on the public safety. One of the most basic and important responsibilities of a mu *1359 nicipal government is to protect the safety of its people. It therefore seems difficult to imagine that any municipal government would voluntarily agree to participate in the premature release of inmates whom it believes will pose an imminent threat to the community. To be sure, if a municipal government unambiguously agrees to take such action, a court may have no alternative but to enforce the agreement. But unless the agreement is truly unambiguous, I would think that a court cognizant of its responsibilities to the community would hesitate to require the municipality to follow a course of action that is antithetical to the municipality's most basic obligations and contrary to the public safety.
In conclusion, I do not think that the City violated any specific and definite provision of any order when it stopped listing any of the categories of inmates at issue in this appeal. Accordingly, I would reverse the district court order at issue in its entirety.

. These paragraphs listed the following offenses:
A. Murder, attempted murder, forcible rape, attempted rape, involuntary deviate sexual intercourse, corrupting the morals of a minor, arson, kidnapping, aggravated assault, a crime of violence committed or attempted with a firearm, knife, or explosives, and escape from custody.
B. Domestic Violence and Abuse Offenses ....
JA101.

. This interpretation is dictated by the analogous provisions of the district court’s order of September 21, 1990. Paragraph 4E of that order provides in pertinent part as follows:
E. Release categories shall be:
(1) a person admitted to prison under prior orders of the court who is still detained but who would not be admitted under this order as now modified;
(2) a prisoner held in default of the lowest amount of percentage bail as necessary to reduce the population in all institutions to the maximum allowable. If inmates considered for release under this paragraph are held in default of equal amounts of bail, preference shall be given to the inmate held the longest time.

(3)a person charged with offenses enumerated in paragraphs 3A and B shall not be released pursuant to this paragraph.

JA103-04 (emphasis added). Since paragraph 4E(3) does not provide for the release of any persons, the prohibition in that provision against release "pursuant to this paragraph" must at a minimum mean release pursuant to paragraph 4E (and specifically paragraph 4E(1) and (2)).
Paragraph 17a(l) and (2) of the 1991 Consent Decree restated paragraph 4E(l)-(3) of the September 21, 1990 order. Consequently, the statement in paragraph 17a(2) of the 1991 Consent Decree that "[pjersons charged with offenses enumerated in paragraphs 3A and 3B shall not be released pursuant to this paragraph” should be given the same interpretation as the virtually identical language in paragraph 4E(3) of the September 21, 1990 order.

. The plaintiffs defend the district court's holding on a different ground. They argue that the City was prevented from retaining custody of such inmates with detainers pursuant to paragraph 17a(l) of the 1991 Consent Decree. This provision, as previously noted, requires the listing of:
all persons admitted to the prisons under prior orders of the court who are still detained but who would not be admitted under the provisions of this order as now modified.
JA116. The plaintiffs argue that such persons could not be "admitted” to the Philadelphia prison system as a result of paragraph 2h of the 1986 Consent Decree, which states that “[n]o federal or state prisoners other than inmates detained for immediate court appearances, shall be housed within the Philadelphia Prison System, except for those federal prisoners in the custody of the United States Marshal." JA92. See Ap-pellees’ Br. at 35.
I am not persuaded that the district court’s holding can be sustained on this ground, which neither the district cpurt nor the majority of this panel has embraced. For one thing, this argument does not address the language of paragraph 17a(2) of the 1991 Consent Decree, which, as explained above in text, appears to prohibit the •release of the inmates in question. Consequently, even if the plaintiffs’ interpretation of paragraph 17a(l) were accepted, their argument would at best create an ambiguity and, as the court notes, ”[t]he resolution of ambiguities ought to favor the party charged with contempt.” Maj. at 1350.