**Brady v. Brady**

446

C.P. of Philadelphia County, D.R. no. 82-16516.

*Shaun Brady,* plaintiff, pro se.
*Allen Fisher,* for defendant.

WATKINS, *J.,* June 25, 1996—

## HISTORY OF THE CASE

The parties in this case, Shaun Brady and Theresa Brady, are the parents of two sons and one daughter, Sean, Christopher and Shannon. These parents have been engaged in disputes involving custody and support over 13 years. The court record reflects that during this time period, Father has filed three petitions to modify visitation and two petitions for contempt of custody.

Father initially filed a complaint for partial custody on March 30, 1983. A custody order was entered by agreement on August 27, 1983, pursuant to which Mother was given primary custody of the minor children and Father was afforded visitation at certain specified dates and times.

On February 26, 1985, Father filed his first petition to modify visitation. Subsequent thereto, the parties again reached an agreement and an amended custody order was entered on April 30, 1985.

Less than a year later, the husband filed his second petition to modify visitation, dated April 28, 1986. As before, the record reflects that an agreement was reached and that the petition was withdrawn.

The disputes did not end, however. The husband filed yet another petition to modify visitation, the third, on April 19, 1988. Once again, however, the parties seemingly resolved their differences and an order by agreement was entered on July 6, 1988. A copy of this order is appended as exhibit no. 1.

Asserting that Mother did not abide by the terms of the 1988 order, the husband filed the first of two petitions for contempt of custody on April 19, 1994. When the matter came to hearing as scheduled before the Honorable Stephen Levin on May 12, 1994, Father inexplicably failed to appear. Judge Levin ultimately dismissed the petition.

In doing so, Judge Levin addressed the issues raised. At the hearing, Judge Levin was advised that neither of the parties' two sons wanted to visit with Father as permitted under the 1988 custody order. After evaluating the circumstances presented, Judge Levin expressly authorized the two sons to make final decisions regarding visitation. A copy of the transcript from the hearing before Judge Levin is attached as exhibit no. 2.

Raising the same identical issues, Father filed his second petition for contempt of custody on June 9, 1995. As before, this was predicated upon allegations that Mother was in violation of the July 6, 1988 custody order. The matter came to hearing before the Honorable Thomas Watkins on November 14, 1995 and the petition was denied.

Father takes an appeal from this court's order denying the contempt petition.

## STATEMENT OF THE FACTS

The parties are the parents of one adult daughter, Shannon Brady, and two teenage sons, Sean and Christopher. Shannon, who was age 19 as of the date of the hearing, was not the subject of the petition. The petition pertained exclusively to visitation with the two teenage sons, Sean and Christopher, ages 15 and 14, respectively.

It is undisputed that neither Sean nor Christopher wishes to continue visitation with Father. Longstanding conflicts have developed between the teenage sons and Father and both have been to mediation and counseling without any success. (See Record, November 14, 1995 at 14, 20.) Unrebutted testimony was elicited that Father was a reformed alcoholic and that the two sons had resisted prior visitation. An incident was described exemplifying the existing conflict.[1]

It was brought to light that the two teenage sons were present at the hearing before Judge Levin on May 12, 1994 and testified before the court at that time concerning their reluctance to visit Father. (Record, November 14, 1995 at 14.) This is reflected in the trial transcript from that date.

While testimony was presented establishing that the teenage sons actively resisted visiting Father, no evidence was presented that Mother had impeded the visitation schedule or had otherwise attempted to undermine the parental relationship between Sean and Christopher and Father. To the contrary, credible testimony was elicited concerning Mother's efforts to compel the two teenage sons to continue to visit Father.

After considering the testimony, the court ultimately denied the contempt petition finding that it lacked basis and was entirely devoid of merit. In so holding, the court found that Mother did not violate the terms of the order and that the two teenage sons made a willing decision to limit visitation attributable to serious differences and disputes with Father that have thus far

---

1. At the hearing before this court, Mother described an incident in which Father purportedly locked the two sons in a vehicle following some type of argument. (Record, November 14, 1995 at 17.)

been unreconcilable following considerable efforts including counseling and mediation.

## LEGAL ANALYSIS

The power to hold parties in contempt of court for failing to abide by partial custody or visitation orders is conferred upon the court pursuant to 23 Pa.C.S. §4346. As promulgated by the legislature, the requisite standard for a contempt finding is a willful failure to comply with a custody or visitation order.

It is well recognized that a contempt finding cannot be entered unless the alleged contemnor had knowledge of the order which is said to have been violated and unless such order is specific and definite. *In re Rubin,* 378 F.2d 104 (3d Cir. 1967). This precept has been adopted by the courts in this Commonwealth and a four part standard was initially delineated in *Fenstamaker v. Fenstamaker,* 337 Pa. Super. 410, 487 A.2d 11 (1985), a case which dealt with direct criminal contempt pursuant to 42 Pa.C.S. §4132(2).

In accordance with the standard, the following elements are necessary to support a finding of contempt:

"(1) The order or decree must be definite, clear, specific and leave no doubt or uncertainty in the mind of the person to whom it was addressed of the conduct prohibited[;]

"(2) The contemnor must have had notice of the specific order or decree;

"(3) The act constituting the violation must have been volitional; and

"(4) The contemnor must have acted with wrongful intent." *Fenstamaker, supra* at 416, 487 A.2d at 14.

While *Fenstamaker* applied the standards under a specific criminal statute, the Superior Court recognized

its utility and expanded its applicability by incorporating it in the context of contempt of custody proceedings in *Sutliff v. Sutliff*, 361 Pa. Super. 194, 201, 522 A.2d 80, 83-84 (1987). Thus, the requisites are highly relevant to the case at bar.

In view of the foregoing precepts, the court turns to the custody agreement upon which the contempt petition is predicated. It is incorporated into an order of court and provides:

"And now, July 6, 1988, it is agreed by and between Shaun Brady, plaintiff, and Theresa Brady, defendant, that the court enter a custody determination and order that Theresa Brady have custody of the children, Shannon, Sean, Christopher.

"It is further agreed by and between the parties that Father shall have joint legal custody of the parties' children and shall enjoy partial custody of the parties' children every Tuesday from 6 p.m. returning children to Mother's home at 10 a.m. on Wednesday morning; every Thursday from 6 p.m. returning children to Mother's home at 10 a.m. on Friday morning.

"Once school commences, Father shall enjoy partial custody every Tuesday and Thursday evening as above referenced except that the children shall be driven by Father directly to their school (Ascension of our Lord).

"Father shall also enjoy partial custody of the parties' children every other weekend from 6 p.m. (Friday evening) to 6 p.m. (Sunday evening).

"Father shall enjoy two weeks vacation with children this summer although the two weeks will not be consecutive. Mother is to be fully informed regarding vacation plans and dates. Vacation period is discretionary as to Shannon.

"At all periods of partial custody, there shall be reasonable telephone access between Mother and children. Furthermore, all emergency telephone numbers are to be supplied by Mother to Father. Father to call Mother immediately if any emergency arises.

"Major holidays shall be alternated between Mother and Father with the exception of Christmas which shall be with Mother each year. Father, however, shall enjoy partial custody of the parties' children on Christmas day from 3 p.m. to 8 p.m.

"Parties further agree that by mutual concurrence, there may be additional times wherein Father may enjoy additional time with the children.

"This agreed order is predicated upon Father relocating to Mother's parish."

As a starting point, the court recognizes that while the July 1988 order delineates certain periods for visitation, it does not impose any affirmative obligation upon Mother to encourage, compel or force any of her sons or daughter to visit Father at the set dates and times. The order, which was entered by agreement under entirely different circumstances nearly six years ago, simply does not contemplate or address what was to occur should one or more of the children refuse to visit Father. In that respect, the order, on its face, is not definite, clear or specific with regards to the issue of forced visitation. In view of this, it would be legally improper to even entertain entering a contempt finding.

Reaching the same conclusion, the Superior Court, in *Sutliff, supra,* which is analogous to the case at bar, considered a custody order which prescribed certain

dates and times for visitation and which mandated that the mother shall have the children ready and prepared to make the visits. In concluding that none of the custody orders specifically or clearly required the mother to encourage the daughter to visit the father, the Superior Court found no basis for contempt and reversed the lower court's determination respecting the issue.

The reasons for rejecting contempt based on the wording of the custody order at issue are even more compelling than in *Sutliff*. Whereas the underlying order in *Sutliff* did at least impose an affirmative obligation upon the mother to prepare the children for the visits, such is not the case instantly. In the case before the court, the pertinent order, which was entered by agreement, merely designates certain dates and times for visitation without imposing any affirmative obligations.

While the contempt petition must legally fail since the underlying order lacks any degree of specificity regarding forced visitation, it should also be rejected based upon Judge Levin's directive on May 12, 1994 construing the order to leave visitation within the discretion of the two teenage sons. Although the court's directives relating to future contacts between the two teenage sons and Father were not apparently reduced to a specific order, they nonetheless were made on record and Father's contempt petition was denied at that time.

Given Judge Levin's instructions, it would be entirely inappropriate to hold Mother in contempt for violating the 1988 order based upon any events that occurred subsequent to that date. By relying in good faith upon the court's findings exonerating her from wrongdoing

and leaving visitation issues within the discretion of the teenage sons, Mother would have no conceivable basis for assuming that she had any special obligation to force the two teenage sons to visit Father.

Consequently, it is apparent that by relying upon Judge Levin's directive, Mother could not have had notice which would be required for a contempt finding consistent with the requisites prescribed in *Fenstamaker, supra.*

Judge Levin clearly acted within his authority in expounding upon the July 1988 partial custody order and in otherwise clarifying and addressing Mother's responsibilities relating to visitation. As set forth in *Mellott v. Mellott,* 328 Pa. Super. 200, 204, 476 A.2d 961, 963 (1984), when orders are ambiguous respecting the duty of a parent with primary custody to compel children to visit non-custodial parents, the court is vested with the authority to clarify, expand or amend the prior order.[2]

Aside from the issues pertaining to ambiguities in the initial custody order entered by agreement, Judge Levin's subsequent interpretation, and matters pertaining to notice, the contempt petition is further devoid of merit since no evidence was produced that there was a willful violation of any custody order as would be required for a contempt finding under 23 Pa.C.S. §4346.

On this issue, no testimony was elicited nor were any allegations leveled that Mother made any attempt to obstruct or impede Father's ability to visit the children.

---

2. While, indeed, the court's fact findings and conclusions in *Mellott* differ from those reached instantly, this general proposition holds true.

Similarly, no testimony was adduced that Mother attempted to alienate the children from Father. With regards to this matter, the record reveals just the opposite. Mother originally attempted to force the children to visit Father and both the children and Father had been to mediation and counseling but without success. Evidently there had been a history of conflict between Father and all of the children, who are now teenagers.

To hold Mother in contempt based upon a petition directed against her but predicated solely upon the two teenage sons' refusal to maintain active visitation with Father would impose a grievous injustice under the circumstances of this case. This is particularly evident in light of the counseling attempts, prior relations between the parties and the current age and maturity of the two teenage sons.

Rather than solely cast blame upon Mother, it is incumbent upon Father to take it upon himself to examine his own relationship with his children, his prior conduct, the conflicts that have developed and the reasons underlying his estrangement from not just one, but all three of his teenage children.

For the above reasons, the trial court's decision should be affirmed.

CUSTODY, PARTIAL CUSTODY,
VISITATION AGREEMENT

And now, July 6, 1988, it is agreed by and between Shaun Brady, plaintiff and Theresa Brady, defendant,

that the court enter a custody determination and order that Theresa Brady have (custody) of the child(ren): Shannon, Sean, Christopher

It is further agreed by and between the parties that: Father shall have joint legal custody of the parties' children and shall enjoy partial custody of the parties' children every Tuesday from 6 p.m. returning children to Mother's home at 10 a.m. on Wednesday morning; every Thursday from 6 p.m. returning children to Mother's home at 10 a.m. on Friday morning.

Once school commences, Father shall enjoy partial custody every Tuesday and Thursday evening as above referenced except that the children shall be driven by Father directly to their school (Ascension of our Lord).

Father shall also enjoy partial custody of the parties' children every other weekend from 6 p.m. (Friday evening) to 6 p.m. (Sunday evening).

Father shall enjoy two weeks vacation with children this summer although the two weeks will not be consecutive. Mother is to be fully informed regarding vacation plans and dates. Vacation period is discretionary as to Sh[annon.]

At all periods of partial custody, there shall be reasonable telephone access between Mother and children. Furthermore, all emergency telephone numbers are to be supplied by Mother to Father. Father to call Mother immediately if any emergency arises.

Major holidays shall be alternated between Mother and Father with the exception of Christmas which shall be with Mother each year. Father, however, shall enjoy partial custody of the parties' children on Christmas Day from 3 p.m. to 8 p.m.

Parties further agree that by mutual concurrence, there may be additional times wherein Father may enjoy additional time with the children.

This agreed order is predicated upon Father relocating to Mother's parish.

/s/Shaun Brady
Plaintiff
/s/Theresa Brady
Defendant

## ORDER OF COURT

Now, to wit, July 6, 1988, upon presentation of the foregoing agreement, said agreement is approved and made the order of court.

BY THE COURT
/s/O'Brien, J.

## EXHIBIT NO. 2

## EXCERPT OF PROCEEDINGS

The court: The Father's petition is dismissed for failure to appear.

I do not help you by just dismissing petitions. That is why I took you in the back to talk to you.

I do not help you by just saying, "Hey, somebody won a legal victory in a courtroom."

That is not what this is about.

This is about whether or not you should grow up knowing that you have a Father, and you have already rejected your Father, and you are old enough to make the decision.

I would hope that the two younger guys would consider having some type of relationship with him.

You can limit it. You can tell him you only want to go with him on Saturdays, at such and such a time to such and such a place but I cannot order that at this point. He is not here.

He asked that you be held in contempt. I am not holding you in contempt. He did not even come.

It is a sad case to me that the children completely lose their Father.

Is he a bad man?

Mrs. Brady: Well, he was an alcoholic.

The court: Is he now?

Mrs. Brady: No, he's not. As far as I know, he is not drinking.

The court: And when he is not drinking, does he act respectfully?

Mrs. Brady: He can be very arrogant if he doesn't get his own way.

The court: Well, I am sorry, kids, I cannot help you, all right?

My job is to help you and I would like to help you, but there is not much I can do.

When your Father comes, if you want to see him, you have the privilege of going with him, all right?

If you do not want to, I am not going to make you right now.

One of the things you might suggest to him, if he becomes angry, is that you will be delighted to go back to the counselor and talk to the counselor and tell him how you feel and what you feel and how you can work it out.

It is always sad if you have to grow up without a Father in these type of circumstances, all right?

I am not putting blame on you or anybody else. It is not a question of who is to blame.

The people who are clearly innocent are the kids and they have gotten the worst of it here—all right?—and it does not make me happy to let you go out, not helping you, but I have no way to help you, O.K.?

But what I want to say to you, Chris, is, if you can find a way to work something out with him—and you, too, Sean—where you can, at least, spend an afternoon with him occasionally, in the long run, you will find that is better than having the pain of not having a Father at all, O.K.?

But you make the choice. I cannot make it for you.

Thank you very much. You can leave.

(Whereupon, the hearing concluded.)

---

I hereby certify that the proceedings and evidence are contained fully and accurately in the notes taken by me on the trial of the above cause, and that this copy is a correct transcript of the same.

/s/illegible
Official Stenographer

Date: September 26, 1994

The foregoing record of the proceedings upon the trial of the above cause is hereby approved and directed to be filed.

---

Judge